178 So.2d 235

**LOUISIANA STATE BAR ASS'N**

v.

**Jerome T. POWELL.**

**No. 47371.**

July 2, 1965.

Rehearing Denied Sept. 30, 1965.

Walter G. Arnette, Chairman, A. K. Goff, Jr., Vice-Chairman, Pat. W. Browne, Sr., New Orleans, A. Leon Hebert, Baton Rouge, James H. Drury, New Orleans, for petitioner.

Isaac Abramson, Shreveport, for respondent.

FOURNET, Chief Justice.

This court's Committee on Professional Ethics and Grievances, upon the complaint of the firm of Stewart & May of Chicago, Illinois, contained in a letter dated November 12, 1963, instituted this proceeding against Jerome T. Powell, an attorney practicing in Shreveport, Louisiana, under the original jurisdiction vested in us by Section 10 of Article VII of the Louisiana Constitution of 1921, sekeing his disbarment on charges of professional and ethical misconduct within the meaning and intendment of the provisions of Section 11 of Article XIV of this court's Articles of Incorporation of the Louisiana State Bar Association, constituting our Canons of Professional Ethics.[1]

1. This canon is found at page 167 of Volume 21–A of the Revised Statutes and

reads as follows: "The lawyer shall refrain from any action whereby for his

The petition is predicated on one charge of misconduct drawn up by the committee following a full hearing, in which it is asserted the respondent failed to discharge his duty to timely account for monies received by him as the attorney employed in Louisiana to marshal the assets of the Succession of Thomas H. Peete within the jurisdiction of Louisiana, which funds he commingled with his own and converted to his own use.

After issue was joined by the respondent in an answer filed in proper person—in which he admitted generally the allegations of the specification as well as the Bill of Particulars attached to the complaint of the Chicago firm, but denied any willful intention of professional misconduct, and, in effect, threw himself upon the mercy of the court—Charles L. Mayer, a member of the Shreveport bar, was appointed by this court as the commissioner for the taking of the evidence in the case and reporting to us his findings of fact and conclusions of law.

■ The Commissioner, in his report, which is rather short inasmuch as the facts forming the basis of the charge were admitted by respondent, found these to be substantially as charged in the specification, and concluded Powell was guilty of vio-

lating Section 11 of the Canons of Professional Ethics. He recommended that proper disciplinary action be taken by us. Since the respondent did not except to any portion of this report, it stands confirmed as to him, and it now becomes our duty to determine the action warranted under the facts. See, Louisiana State Bar Association v. Woods, 243 La. 94, 141 So.2d 828, and Louisiana State Bar Association v. Wheeler, 243 La. 618, 145 So.2d 774.

In this court the respondent was represented by special counsel who calls our attention to the jurisprudence to the effect that disciplinary action against an attorney for professional misconduct is not intended ·as punishment, but, instead, for the benefit of the profession and protection of the members of society generally. He vigorously urges, therefore, that consideration be given to the fact that Powell, at the time he committed the act charged, was under a mental and emotional strain because of business difficulties and distress over the condition of a mentally retarded child. As a consequence, it is contended a lesser discipline, such as a reprimand or suspension, would be sufficient punishment for this misconduct, the first in almost 15 years of honorable practice, and particularly so since Powell has made full restitution and

personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client. Money of the client or collected for the client or other trust property coming into the possession of the

lawyer shall be reported and accounted for promptly, and shall not under any circumstances be commingled with his own or be used by him."

assures the court it will never again be called upon to entertain similar charges against him, or any charge of professional misconduct.

On the other hand, the committee opposes any leniency being shown Powell since (1) he admitted both in answer and during the hearings the specification against him was essentially correct and (2) although restitution, even belated, as here, is encouraged, it is not a defense to this charge, and its weight as a mitigating circumstance is lessened by respondent's disregard of the admonition in Section 11 of the Canons of Professional Ethics against the commingling of the funds of his several businesses with those derived from the practice of law, and all the more particularly since he admitted "going from one to the other, based on the convenience of the cash he had or did not have in the various accounts." The committee further calls to our attention the fact that in answer to the complaint respondent stated "these funds were inadvertently by my agent commingled with personal funds," although during examination by the committee at its hearing on May 5, 1964, he admitted this was not true except as to $100, and, finally, that resort had to be made to process by subpoena to compel respondent's appearance at this hearing.

From our appreciation of the evidence and documents introduced, it appears the respondent, after being appointed by Stewart & May to marshal the assets of the Succession of Peete located in Caddo Parish, promptly instituted the necessary ancillary proceedings, securing a judgment placing the heirs in possession on September 6, 1963, and, thereafter, pursuant to power of attorney executed in his favor by these heirs withdrew cash in the amount of $1,007.21 on deposit in the name of decedent in two Shreveport banks, and, after completion of the transfer of the real estate in the succession, cashed the $8,000 check given him by the purchaser as consideration therefor. He admitted commingling this money with his own and using it in connection with the operation of one or more of the three businesses he owned.

While the record fails to support counsel's statement that at the time of Powell's defalcation he was under great stress, due, in part, to the condition of a mentally retarded child, this was neither pleaded by respondent nor mentioned by him at the hearings. We do believe, however, that when he mailed a check for $8,757.21 (the full amount of the $9,007.21 collected by him less his fee of $250) to the Chicago firm on October 21, 1963, in response to demands for an accounting, said check being drawn on the American Bank & Trust Company account of his real estate com-

pany, he was experiencing serious financial difficulties, largely because he was attempting to run his three businesses (a service station, real estate company, and construction firm) in addition to practicing law. For some reason not clear in the record, he was unable to raise sufficient funds to place on deposit in this account to cover this check.

Yet the record indicates he made every effort to do so. In fact, on November 18, 1963, only 3 weeks after the check was sent to Stewart & May, he mailed this firm a check for $4,000 on account, and, less than 6 months later, made settlement with a local law firm employed by the Chicago attorneys by paying them $6 in cash, a bank money order for $5,000, and his personal note in favor of Stewart & May for $558.58. This is obviously more than he owed, but is apparently in accordance with a letter written him by the Chicago firm following receipt of the $4,000 on account, wherein he was informed he would receive no fee for his services in the succession matter under the circumstances. and, in addition, that "interest in the amount as paid by Catherine Peete (purchaser of the realty in the succession) on her loan * * * for the entire time you had the benefit of said funds," would be charged against him. (The information within brackets has been supplied.)

While we agree with the committee this restitution does not, in itself, excuse respondent's misconduct, we think it is a matter to be taken into consideration in disciplining him. We find, further, that Powell has cooperated in facilitating the speedy determination of this matter.

As pointed out in Thornton's work on Attorneys at Law, quoted with approval by this court in In re Novo, 200 La. 833, 9 So. 2d 201, and In re Weber, 202 La. 1037, 13 So.2d 341, "The solution of this question (of the discipline to be meted out in such cases) frequently involves too many considerations of public policy and concrete justice, dependent upon the gravity and consequences of the misconduct, the age, character, and reputation of the attorney, the probability of his reformation, the circumstances attending the commission of the offense, and the like that no fixed or arbitrary rules have been, or properly can be, adopted by the courts. * * * It is a generally accepted principle, however, that since the primary purpose of a disbarment proceeding is not punishment, but the protection of the courts and the public, disbarment should never be decreed, if any discipline less severe would accomplish the desired result, as when there are prospects that the attorney's conduct and character may undergo reformation." Vol. 2, Section 894. (The information within brackets has been supplied.)

■ Applying this here, we find from our records that Powell is now 50 years of age, that he was admitted to the practice of law on June 18, 1951, and that this is the first act of professional misconduct with which he has been charged during all of the years intervening. Moreover, he stated at the hearings he has sold his service station and arranged his other affairs in such a manner as to permit him to practice law without becoming so financially involved as to jeopardize the responsibility placed on him of keeping entirely separate and untouched monies collected by him as the result of his law practice. We are impressed with the sincerity with which he frankly admitted the plight in which he found himself that resulted in the action forming the basis of this proceeding, and the sincerity with which he stated he has learned his lesson and will never again be brought before us on any charge of professional misconduct. Under these circumstances we think a suspension for two years will accomplish the end desired.

For the reasons assigned, it is ordered that Jerome T. Powell be, and he is hereby, suspended from the practice of law in the State of Louisiana for a period of two years, such period to begin with the day this decree becomes final. All costs of the proceeding are to be paid by respondent.

178 So.2d 238