259 So.2d 895 (1972)
261 La. 409
LOUISIANA STATE BAR ASSOCIATION
v.
Donald B. RUIZ.
No. 51202.
Supreme Court of Louisiana.
March 27, 1972.
Louisiana State Bar Association Committee on Professional Responsibility, A. Leon Hebert, Baton Rouge, Chairman, Pat W. Browne, Sr., James H. Drury, New Orleans, Leonard Fuhrer, Alexandria, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for petitioner.
Milton P. Masinter, New Orleans, for respondent.
DIXON, Justice.
This disbarment proceeding was duly instituted against Donald B. Ruiz. After a full hearing, the Committee on Professional Ethics and Grievances found respondent guilty of violations of sufficient gravity to warrant disciplinary action. Hearings were held before H. Martin Hunley, Jr., *896 whom we appointed Commissioner. Commissioner Hunley found against the respondent on each of the three specifications against him.
The specifications involved commingling of funds, failure to account, and failure to represent a client competently and efficiently.
The Commissioner found that the respondent had overcharged his clients, had commingled their funds, had failed to account to his clients, and had failed to perform legal services for them competently; he recommended the return of certain monies to the clients, a suspension from practice for ninety days, and reprimands.
The first of the three specifications was the most serious. The respondent's client, Joseph B. Pressner, made a deposit of $1660.00 with a real estate agency in preparation for the purchase of some property. The transaction was to have been consummated on February 6, 1969 in respondent's office, but was abandoned. Respondent undertook to obtain the return of the deposit. The deposit was returned to respondent by check dated March 7, 1969. It appeared in one of respondent's bank accounts on April 15, 1969. The check from the real estate company was made payable to respondent's client, whose endorsement on the check appears to be a forgery. Respondent's wife, who served as his secretary admitted that she might have endorsed the client's name on the check.
On June 16, 1969 respondent's wife issued a check to the client for $1150.00 ($1660.00 less a fee of one-third and certain unitemized costs). On three occasions when the client presented the check for $1150.00 to the bank for payment, it was dishonored for lack of sufficient funds.
A complaint was lodged with the district attorney's office. Nine days later the client received a certified check from the respondent for $1150.00, and the charges were subsequently dropped by the district attorney.
Respondent testified that he knew nothing of this transaction until weeks after the criminal charges had been dropped. He said he was neither aware of the receipt of the check from the real estate firm nor its deposit. Respondent produced no evidence concerning instructions he had given his wife in the use of clients' funds. How his wife knew how much to deposit as fee is not explained. The check had been deposited in an account which was used to pay operating expenses.
The Commissioner found: "Mrs. Ruiz appeared to this commissioner to be a woman of intelligence and of education. She had completed part of the work toward a law degree. She very valiantly assumed all of the blame in connection with the Pressner check. Her husband, respondent herein, was content to have her assume this blame. Respondent even pretended to believe that his wife deliberately deceived him . . . It seems incredible to this commissioner that respondent did not know" that the check had been received, deposited and commingled with funds that were used to pay office expenses. Further, respondent's testimony before the committee was at variance with that before the Commissioner.
The Commissioner further found that the $553.00 charge made for obtaining the refund from the real estate agency was excessive.
For this clear violation of Article XIV, Section 11 of the charter of the Louisiana State Bar Association in effect at the time, the Commissioner concluded that respondent should be suspended from the practice of law for three months and ordered to return $300.00 of the fee withheld from Mr. Pressner.
Commissioner Hunley's findings are amply supported by the evidence. We are impressed with the obvious disregard by respondent of established ethical standards. In his testimony, he related that he no longer had any bank accounts, that he had purchased a safe, converted all checks received *897 to cash or money orders, and put the cash in his safe to be disbursed by himself. Respondent's testimony, if sincere, exhibited a surprising ignorance of Canon 9 (and the disciplinary rules under the Code of Professional Responsibility in effect at the time of the hearing before Commissioner Hunley), which requires the lawyer to preserve the identity of the funds and property of his clients.
Specification No. 2 grew out of the settlement of a workman's compensation case. Respondent received checks in settlement of the case on May 22, 1969 in the amounts of $4000.00, $1167.00 and $115.00. Those checks were negotiated by respondent within a day or so from the date received. It was not until December of 1969 that respondent's wife (his secretary) gave the client a statement showing that there was a balance due her of only $302.00. Respondent claimed credit for numerous advances made to his client and bills and expenses paid for the client with the funds.
The Commissioner was satisfied that medical expenses, a furniture bill and rent owed by the client, Irene Burrell, were paid by the respondent out of the funds received in settlement of the compensation claim. Although the client denied receiving cash advances, the Commissioner was unable to conclude under the evidence before him that the respondent defrauded his client.
The record does establish that, although the compensation case was settled on May 22, 1969, the respondent did not pay certain expenses of his client, which he said he had agreed to pay, until December of 1969. There is no plausible explanation by the respondent for this delay. Nor is there plausible explanation for his failure to account to his client between May and December of 1969. His excuse was that part of the settlement involved payment for future medical expenses, that his client needed a second operation, and he was afraid she would not get the second operation unless he kept the money for her, advancing it to her only as she needed it. The record establishes, however, that the money for the second operation was not to be paid unless his client actually underwent the second operation.
The Commissioner further found that the respondent overcharged his client in the amount of $100.00 and failed to give her credit for $115.00 which he received for costs on the day the case was settled. In addition to recommending the return of these funds, the Commissioner recommended a reprimand for this further violation of Article XIV, Section 11 of the charter of the Louisiana State Bar Association, in which finding we concur.
The third specification against respondent arose out of employment to file a petition in bankruptcy. His clients, Mr. and Mrs. Henry T. Wester, paid him $100.00 on June 23, 1970 and another $100.00 about July 15, 1970. Respondent stated that he told his clients the fee would be $250.00 plus costs of about $100.00. The clients testified that they were unable to get the respondent to file the petition. Respondent's position was that he intended to file the petition after his clients had resided in Louisiana for six months. The clients testified that they signed the bankruptcy petition forms in blank. This the respondent denied. Respondent testified that December 8, 1970 was the date typed on the bankruptcy petition and schedules, and that that date was typed on June 23, 1970. This contention of the respondent was found by the Commissioner to be "unusual and inconsistent with customary practices." There was no way for the respondent to know, on June 23, 1970, what his clients' assets and debts would be on December 8, 1970.
The clients further testified that the respondent executed a fictitious chattel mortgage on their automobile, in the hope of having it disclaimed by the bankruptcy court.
The principal complaint of the clients was that the respondent accepted $200.00 which he did not earn, and which he has *898 refused to return to them. The Commissioner's finding, in which we concur, was:
"It is concluded that respondent inexcusably failed to make it clear to his client as to when the bankruptcy schedules were to be filed, and led him to believe that they were to be filed shortly after they were signed in June of 1970. For this he should be reprimanded and ordered to return the $200 which he received for fee and costs (which costs were never expended since the petition was not filed)."
The report of the Commissioner in this case is careful, detailed and accurate. Under his direction, the record reflects the hearing to have been a model of propriety. The Commissioner's conclusions are supported in each instance by the record. Little serious argument can be made with the correctness of his factual findings.
Respondent argues in brief that he has been denied equal protection of the law and due process of law, and that an essential element for disbarment is either bad faith or fraudulent purpose.
Respondent's constitutional argument seems to be based on the notion that disbarment proceedings are criminal in nature and the Canons of Ethics are so vague and indefinite that lawyers are not informed of what conduct could result in suspension, reprimand, or disbarment.
There is nothing vague or indefinite about Article XIV, Section 11 of the charter of the Louisiana State Bar Association:
"Dealing With Trust Property. The lawyer shall refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.
"Money of the client or collected for the client or other trust property coming into the possession of the lawyer shall be reported and accounted for promptly, and shall not under any circumstances be commingled with his own or be used by him."
Article XIV, Section 11 of the charter of the Louisiana State Bar Association does not violate the due process clause of the Fourteenth Amendment to the United States Constitution. Nor is Article XIII of the articles of incorporation of the Louisiana State Bar Association vague. We so held in Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413. The exception raised on this point is overruled.
We also find that the respondent was adequately informed of the charges against him and was not denied his right to confront his accusers by the use of the transcript of the proceedings before the committee. Louisiana State Bar Association v. Jacques, supra; Louisiana State Bar Association v. Ricard, 237 La. 530, 111 So.2d 761; Louisiana State Bar Association v. Sackett, 231 La. 655, 92 So.2d 571. Nor has respondent been denied a fair and impartial trial. The disciplinary action begun by the committee was not a trial; it was an administrative hearing. We find that the hearing was fair and impartial. Respondent was not denied due process of law under the Fourteenth Amendment to the United States Constitution and accordingly his exceptions filed on these points are overruled.
Disbarment proceedings are not criminal in nature. As this court has said on numerous occasions, a disbarment proceeding is not so much for the punishment of the attorney as it is for the preservation of the integrity of the courts and the salutary effect it has upon other members of the bar. Louisiana State Bar Association v. Jacques, supra; Louisiana State Bar Association v. Blum, 256 La. 530, 237 So. 2d 366; In re Novo, 200 La. 833, 9 So.2d 201.
No denial of equal protection or due process is discernible in these proceedings. The identical contention was made in the Jacques case where we said:
"The Committee on Professional Ethics and Grievances cannot disbar. All it *899 does is find facts and decide whether there is a probability that an attorney has willfully violated the ethical code laid down by the profession. In a sense, it performs the same function as a grand jury. Only this court may disbar an attorney. And it does so only after appointing a commissioner to take evidence, make findings of fact and law and also state his conclusions therefrom. The commissioner receives the evidence under rules affording the attorney his due process rights. Thereafter, the commissioner files his report with this court. And in argument before this court, the respondent may again raise the issue of whether he was denied due process."
There is no denial of equal protection of the law for this same reason.
Bad faith, fraudulent purpose, negligence, action or inaction may be elements justifying disciplinary action by this court. Actions may be instituted by the Committee on Professional Ethics and Grievances for any violation or violations of the Canons of Ethics (now the Code of Professional Responsibility) whenever it concludes that an attorney has committed some act sufficient to warrant a reprimand, suspension, or disbarment. Such is the committee's duty to this court, the profession and the public.
In the case before us, we find sufficient evidence of bad faith and malpractice to warrant disciplinary action.
For the reasons assigned, it is ordered, adjudged and decreed that Donald B. Ruiz, respondent herein, be suspended from the practice of law and his license to practice law be revoked for a period of ninety days. It is further ordered and decreed that the respondent shall return $300.00 of the fee withheld from Mr. Joseph B. Pressner to Mr. Pressner; that he shall be reprimanded for failing to make prompt disbursement of settlement funds of his client and return $215.00 to Mrs. Irene Burrell covering the overcharge on statutory fee and failure to give credit for fees collected for costs; that he shall be reprimanded for failing to return $200.00 in fees and costs to Mr. and Mrs. Henry Thomas Wester and ordered to return $200.00 to them; that he pay all costs herein; and that he present to this court within fifteen days of the date of this decree evidence that such monies have been returned and/or paid.
SANDERS, J., dissents, being of the opinion that the disciplinary action taken is inadequate for the professional misconduct shown.
BARHAM, Justice (concurring in part and dissenting in part).
I concur in the findings of the commissioner adopted by the majority and in the reasoning of the majority, but I must dissent from the decree.
The charges which are found to be proven justify more severe disciplinary action both under the facts of this case and under a comparison of similar disciplinary proceedings previously adjudicated by this court.