359 So.2d 70 (1978)
LOUISIANA STATE BAR ASSOCIATION
v.
Emmett E. BATSON.
No. 58725.
Supreme Court of Louisiana.
May 22, 1978.
Alex W. Wall, Trial Counsel, Dodd, Barker, Avant, Wall & Thomas, Baton Rouge, for defendant-respondent.
John B. Scofield, Chairman, Lake Charles, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, Thomas O. Collins, Jr., Louisiana State Bar Ass'n, New Orleans, for plaintiff-petitioner.

DISBARMENT PROCEEDINGS
SANDERS, Chief Justice.
On October 8, 1976, the Louisiana State Bar Association, appearing through the Committee on Professional Responsibility, brought this proceeding against Emmett E. Batson, a practicing attorney, seeking his disbarment for professional misconduct.
A hearing was conducted by the Committee. Mr. Batson appeared before the Committee, represented by counsel of his choice. Based upon its investigation and the evidence at the hearing, the Committee concluded "that the Respondent had been guilty of a violation of the laws of this State relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of fitness for the practice of law. . . ."
*71 On October 29, 1976, we appointed a Commissioner to report his findings of fact and conclusions of law. The Commissioner's hearing was conducted on January 25, 1977 and March 11, 1977. Respondent was present for the hearing, represented by counsel. The Commissioner found that respondent had been guilty of violating Disciplinary Rule 9-102 of the Code of Professional Responsibility (LSA-R.S. 37, Ch. 4-App., Art. 16, Canon 9, DR 9-102) and Disciplinary Rule 1-102 of the Code of Professional Responsibility (LSA-R.S. 37: Ch. 4-App., Art. 16, Canon 1, DR 1-102), which respectively provide:
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
"(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
The basic facts, upon which the Bar Association's complaints are based, are not in dispute: On and prior to September 19, 1968, respondent was an attorney retained by the Louisiana Department of Revenue concerning a delinquent tax liability of one Ben Beckham, Jr. The claim against Beckham was one of long-standing  arising as early as the 1940's. By September 19, 1968, a portion of the money had been seized and was in the registry of the First Judicial District Court, Parish of Caddo, and, on this date, a check in the amount of $11,834.72 was issued by the Clerk of that court to respondent's order as attorney for the Department of Revenue.
Of the $11,834.72, $1,075.88 was due respondent for attorney's fees; the remainder belonged to the Department of Revenue. Respondent deposited the entire sum in his personal account the day following the issuance of the check.
The record reflects that the State Collector of Revenue authorized respondent to retain these funds pending disposition of other matters regarding the Beckham account. There was no express authorization *72 for the funds to be placed in a personal account, although respondent interpreted his authority in this manner. It is clear, however, that respondent was given no permission to use the funds for his own purposes. The Commissioner so found, and his finding is adequately supported.
Between September, 1968 and October, 1971, respondent left the employ of the Department of Revenue. In October of 1971, an investigation began in the Department concerning the whereabouts of the funds realized in the Beckham collection. Thereafter, through the intercession of others, respondent obtained the issuance of an undated bank money order from the Citizen's National Bank of Hammond in the amount due the Department, $10,758.84.
Respondent caused the date of September 27, 1968, to be placed on the money order and caused it to be placed in the appropriate file in the Department where it would be "found." It was subsequently "found." These are findings by the Commissioner, which are not traversed by the respondent.
Respondent had possession of the funds from September, 1968 through November 9, 1971. Respondent does not contest this fact; however, he denies that they were converted to his own use.
This same matter was also the subject of a criminal prosecution against this respondent for the misappropriation of funds. The State's criminal prosecution was dismissed after the close of the State's case by a directed verdict of acquittal. Respondent did not testify in the criminal proceeding and declined to testify in the hearing before the Commissioner.
Two issues are raised for our consideration: (1) the effect of the acquittal of the criminal charges based upon the same transaction; and (2) the disciplinary action, if any, to be taken against respondent.
Defendant argues that, because the Louisiana State Bar Association Articles of Incorporation Article XV § 8 makes criminal conviction conclusive proof of misconduct, an acquittal must constitute conclusive proof that there has been no misconduct. Defendant argues that to hold otherwise  i.e., that an acquittal does not bar subsequent disciplinary proceedings  would constitute a denial of due process and equal protection of the law. U. S. Const. Amend. 14, § 1. This argument is without merit.
Louisiana State Bar Association Articles of Incorporation Article XV § 8(7) provides:
"(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.

(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime." [Emphasis added.]
Making "the certificate of the conviction. . . conclusive evidence of his guilt of the crime" does not violate due process and equal protection by giving greater weight to a conviction than to an acquittal. Under Article XV § 8, an acquittal is given equal weight regarding innocence of the crime for which respondent has been acquitted. Under § 8(7)(c)(d), the conviction or acquittal is conclusive evidence of guilt or innocence of the crime rather than conclusive evidence of guilt or innocence of unethical *73 conduct on respondent's part. The acquittal does not preclude disciplinary action for professional misconduct.
In the absence of a conviction either due to an acquittal or a lack of criminal prosecution  the Committee must determine whether or not the respondent has violated "any rule of the Code of Professional Responsibility of sufficient gravity as to evidence a lack of moral fitness for the practice of law . . .." Louisiana State Bar Association Articles of Incorporation Article XV § 6. The standard for determining respondent's moral fitness to practice law is the same whether or not he has been convicted or acquitted of a criminal charge.
Louisiana State Bar Association Articles of Incorporation Article XVI EC 9-6 provides:
"Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with his brother lawyers in supporting the organized bar through the devoting of his time, efforts, and financial support as his professional standing and ability reasonably permit; to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety."

Attorneys in this State are held to a very high standard of conduct. An attorney must avoid the appearance of impropriety as well as impropriety itself. Louisiana State Bar Association v. Weysham, La., 307 So.2d 336 (1975); Louisiana State Bar Association v. Blum, 256 La. 530, 237 So.2d 366 (1970); In re Novo, 200 La. 833, 9 So.2d 201 (1942). See also: Louisiana State Bar Association v. Cox, 252 La. 978, 215 So.2d 513 (1968); Louisiana State Bar Association v. Powell, 248 La. 237, 178 So.2d 235 (1965); Louisiana State Bar Association v. Wheeler, 243 La. 618, 145 So.2d 774 (1962).
In the case before us, the record establishes by clear and convincing evidence that the attorney committed professional improprieties in the following respects: (1) to retention of the funds after the termination of his employment; (2) failing to return the funds until an investigation was launched to determine their whereabouts; and (3) returning the funds in a surreptitious manner. This conduct is sufficient to warrant disciplinary action. There are mitigating circumstances: (1) there was a legitimate question about the handling of the funds collected; (2) respondent retained the funds with the approval of his employer; (3) he did make the funds available when an inquiry was made, although in an irregular manner; and (4) in his almost twenty years of practice, this is the only complaint ever made against respondent. In light of these mitigating circumstances, we conclude that a six month suspension from the practice of law is an adequate disciplinary action.
For the reasons assigned, it is ordered, adjudged and decreed that Emmett E. Batson, respondent herein, be suspended from the practice of law and his license to practice law be revoked for a period of six months and that he pay all costs herein.