CALOGERO, Justice.*
A petition for disciplinary action against the respondent attorney G. Emitte Core was instituted by the Louisiana State Bar Association through its Committee on Professional Responsibility following a formal investigatory hearing conducted in accordance with its Articles of Incorporation.
The Committee charged respondent that:
“In your capacity as an attorney at law, you did render a title opinion to the Capital Bank & Trust Company of Baton Rouge, Louisiana, on or about November 21, 1972 for the purpose of obtaining a loan from said bank for your client and relative, Howard Carber, and his company, Big River Equipment Company, Inc. The contents of this title opinion were false and you knowingly misrepresented the truth in order to mislead the said Capital Bank & Trust Company, all in violation of Disciplinary Rule 1-02 [1-102] of the Code of Professional Responsibility of this Association.”
In the year 1972 Core and his law firm, Core, Mills & Roberts, represented the Capital Bank and Trust Company of Baton Rouge on occasional legal matters, including collections. They also owed the bank approximately $100,000.00 in connection with the development of a subdivision. Simultaneously Core was involved in a joint venture in subdivision development with one Howard Carber a contractor who was his aunt’s husband.
When Carber found himself short on cash Core introduced him to an officer at the Capital Bank and arranged for Carber’s corporation, Big River Equipment Company, Inc., a loan of $6,000.00 secured by collateral mortgage on a piece of real estate. Car-ber used the loan proceeds to meet Big River Equipment Company’s payroll. It is unclear from the record whether Carber used this money to pay employees working on the subdivision project Carber was developing in partnership with Core’s law firm, *755 but Core benefitted from the loan at least indirectly because Carber at that time was the general contractor on all of Core’s subdivision projects.
In connection with the loan Core examined title to the property to be mortgaged, rendered a title opinion in which he recited that he had examined the appropriate mortgage and conveyance records, that in his opinion the title of Big River Equipment Company, Inc. to certain described property was valid and merchantable and that no encumbrances primed the bank’s $6,000.00 collateral mortgage coincidentally passed before him as notary public.[1]
In fact at that time the bank’s purported first collateral mortgage was primed by $10,000.00 and $16,000.00 mortgages and a $789.07 judgment.[2] Nor did the title opinion acknowledge that Carber’s corporation owned only an undivided one-half interest in the property being mortgaged. (The other half of the property was owned by Car-ber’s wife who was Core’s aunt.)
Core was aware of the three encumbrances (See Footnote 2) at the time he issued the title opinion. He claims, however, that he also knew that none of them represented extant obligations. He contends that the $10,000.00 note had been paid and was in Carber’s possession; he asserts that the $16,000.00 note was at all times in Carber’s possession (or in Carber’s attorney’s possession) and in fact had never been used; and he claims that he knew that the $789.07 judgment had been paid in full except for some $17.00 in court costs.
It presumably was to be a simple matter for Core to secure the $10,000.00 and $16,-000.00 mortgage notes from his uncle and cancel the three encumbrances. However, as it turned out he was unable to effect the cancellations because as his joint business venture with Carber soured, Carber refused to produce the notes.
Furthermore, when the bank prepared to foreclose on the property they found they were unable to proceed via executiva because the resolution authorizing Carber to execute the collateral mortgage on behalf of Big River Equipment Company, Inc., recited in the title opinion as being made part of the recorded notarial act of mortgage was in fact not made part of the recorded notarial act. Rather than proceeding via ordinaria against Carber the bank sued Core and his law partners. The trial court dismissed the action against Core and his law firm on grounds of prematurity, whereupon the Capital Bank by supplemental and amending petition added Big River Equip *756 ment Company, Inc. and Howard F. Carber as parties defendant.
The Court of Appeal upheld the trial court’s ruling on the prematurity issue but held that St. Paul’s Insurance Company, Core’s malpractice insurer, would not be liable for any judgment against Core and his partners because Core’s conduct constituted fraud which was not covered under the malpractice insurance policy.[3] Capital Bank & Trust Company v. Core, 343 So.2d 284 (La.App. 1st Cir. 1977).
It was not until July, 1978, that the bank received payment in full on the loan (from Core).
After the finality of the Court of Appeal opinion and the denial of writs by this Court on May 11, 1977, the Committee on Professional Responsibility, after receiving a complaint, conducted a preliminary investigation and concluded that an investigatory hearing was required. The Bar Association conducted a hearing on January 23, 1978, concluded that Core was guilty of misconduct, and filed a petition for disciplinary action on June 27, 1978. We appointed a Commissioner to conduct a formal hearing. The Commissioner held a hearing on February 1, 1979, and filed his findings of fact and conclusions of law with this Court.
The Commissioner found the following facts. At the time respondent gave his title opinion he had not made a formal check of the mortgage and conveyance records of the clerk’s office to ascertain the record status of the property. At that time he in fact knew that the encumbrances noted above were of record affecting the property and that the rendered title opinion to the contrary was false.
Even after learning the difficulty the bank was having in getting Carber to pay the notes and knowing that Carber was refusing to produce the notes for cancellation, respondent made no effort to advise Capital Bank of its inferior mortgage ranking on the property. At the time of the rendition of the title opinion, the $10,000.00 note had been paid in full, but the mortgage had not been cancelled and respondent was aware of that fact. Carber apparently held the $16,000.00 collateral mortgage note which had never been used, but this mortgage also had not been cancelled by Carber on advice of counsel (other than Core). The judgment for $789.07 had been paid in full, but it had not been cancelled primarily because $17.00 in court costs remained to be paid. The bank learned of these encumbrances only after going to another attorney to collect the debt.
The Commissioner concluded, however, that respondent could not have been and thus was not in bad faith and had not intentionally tried to take advantage of the bank because such was unlikely considering that Core was doing collection and other legal work for the bank and owed the bank approximately $100,000.00. He concluded that Core’s actions in rendering the title opinion were done carelessly, negligently, and unprofessionaily, but that they were not done dishonestly or with the intent to purposefully mislead the Capital Bank and Trust Company.[4] After considering the appropriate legal principles governing disciplinary proceedings[5] the Commissioner recommended that the following action be taken:
*757 “1) Respondent be ordered to pay to Capital Bank & Trust Company (or to Capital Bank's bonding or insurance company, if such a firm has paid to Capital Bank the amount of this outstanding indebtedness) the $6,000.00 amount of its 'Carber' note, plus an amount equal to the monies expended by Capital Bank & Trust Company in efforts to obtain collection of the amount due under the note less what a normal and uncontested foreclosure proceeding would cost for attorney fees and court costs.
“2) That, unless Respondent proceeds and accomplishes the recommended action in Recommendation ‘1)' above and a written evidence of satisfaction from Capital Bank & Trust Company is received by the office of the Louisiana State Bar Association with copies going to the Clerk of the Louisiana Supreme Court within fifteen (15) days from the date the order is issued, Respondent be ordered suspended until such letter of satisfaction be received from Capital Bank & Trust Company.
“3) That a reprimand be given to Respondent.”
Core’s having now paid the bank loan in full makes the first two recommendations moot. Therefore the only portion of the Commissioner’s recommendation still viable is that respondent Core be given a reprimand.
The Bar Association takes issue with the finding of the Commissioner that the respondent’s actions were not done dishonest *758 ly. They contend that the evidence discloses a series of intentional acts by the respondent, resulting in the issuance of a knowingly false title opinion, resulting in financial difficulty, problems and financial losses for Capital Bank. They take exception to the Commissioner’s recommendation that defendant be given a reprimand and urge us to consider disbarring or suspending respondent from the practice of law.
The Bar Association’s recommendations are surely prompted in part by the Court of Appeal’s holding that Core’s legal malpractice insurer was not liable to the bank under the policy because Core’s conduct constituted fraud.
While the Court of Appeal’s determination in this latter regard is seemingly fully contrary to the Commissioner’s finding, it is not entirely so. The Court of Appeal pointed out that under the definition of fraud as set forth in La.Civ.Code art. 1847, specific intent to harm or cause loss is not an indispensable element. Because La.Civ.Code art. 1847 is couched in the disjunctive, fraud may constitute artifice with design to cause inconvenience to another, opined the Court of Appeal,[6] in effect.
Here, respondent rendered a false title opinion and certified the accuracy of it. He knew from his discussion with the bank officer that the bank loaned the $6,000.00 to Carber with the understanding that they would receive a first mortgage, capable of execution by summary process. There is no question that the bank suffered great inconvenience and delay in recovering the money loaned by not being able to foreclose. However, we accept the Commissioner’s finding that respondent did not act with ill motive or dishonest intent.
Respondent at the time the title opinion was rendered and the mortgage was executed probably believed that cancellation of the recorded judgment and mortgages would later be cancelled without significant delay. Respondent probably did not contrive a false title opinion for the purpose of helping Carber procure the loan without the promised security, and his self-serving silence when Carber refused to cooperate, while improper, does not alone establish ill motive at the time of the rendition of the opinion.
On the other hand, Core’s certification that Carber’s corporation had the full undivided interest in the property when it in fact was only an undivided one-half, and his assurance that the appropriate corporate resolution had been passed, made part of the notarial act, and was of record when it was not, was the grossest sort of dereliction, especially when coupled with his not disclosing to Capital Bank his (minimally) indirect interest in the loan.
We conclude that respondent’s conduct constituted at least gross and wanton negligence reflecting an absolute disregard of his duty competently and professionally to handle a legal matter entrusted to him, if not a contrivance to cause inconvenience to a client.
Respondent’s misconduct is sufficiently serious to require greater punishment than a reprimand. We therefore order G. Emitte Core suspended from the practice of law for a period of six months.

Decree

For the foregoing reasons it is ordered that G. Emitte Core, respondent herein, be suspended from the practice of law and his license to practice be revoked for a period of six months and that he pay all costs herein.
RESPONDENT SUSPENDED FOR SIX MONTHS.
BLANCHE and DENNIS, JJ., dissent with reasons.
DIXON, J., concurs.

 Honorable Edward A. de la Houssaye III participated in this decision as an Associate Justice Pro Tempore.

. He stated in the title opinion:
“We have made an examination of the appropriate indexes in the official Conveyance and Mortgage records of the Parish of East Baton Rouge, Louisiana, and it is our opinion, based on this examination, that the title of: Big River Equipment Company, Inc. to the following described property is valid and merchantable: Tracts 1 and 2, being two acre tracts located on Denham Road, Parish of East Baton Rouge, Louisiana (Emphasis added.)

“Subject to the following exceptions, in addition to any lien that may be created by the filing of the current tax rolls: 1) Collateral mortgage in the sum of $6,000.00 in favor of any future holder or holders, executed by Big River Equipment Company, Inc. on the 29th day of November, 1972, passed before G. Emitte Core, Notary Public, payable at Capital Bank & Trust Company, Baton Rouge, Louisiana, and recorded as Original 82, Bundle 8174.” (Emphasis added.)

. A subsequent title examination by another law firm showed the following encumbrances on the mortgaged property were on the public records at the time Core gave his title opinion:
1) A mortgage of record executed by Howard Carber, et al., in favor of any future holder or holders in the amount of $10,000.00 payable at Fidelity Bank dated 7/1/70 and recorded in MOBT-324, Folio 717, Original 61, Bundle 7337, which mortgage was assumed by Titian Carrolton, Inc. in MOB 2379, Page 233, Original 70, Bundle 7606 on 5/31/71.
2) Outstanding mortgage of record executed by Titian Carrolton, Inc. in favor of any future holder or holders in the amount of $16,-000 recorded on 5/31/71 in MOB 2379, Folio 235, Original 71, Bundle 7606 in the records of the Clerk and Recorder of mortgages for East Baton Rouge Parish.
3) Judgment recorded in Judgment Book 76, Page 270, rendered in Suit No. 139,126 in favor of Perkins Machinery, Inc. and against Howard Carber d/b/a Big River Construction Company in the amount of $789.07 recorded on April 13, 1979.

. We denied writs sought by Capital Bank & Trust Company at 345 So.2d 504 (La.1977).

. The Commissioner’s precise language is as follows:
“That Respondent’s actions in rendering the false Title Opinion were done carelessly, negligently, and unprofessionaily, but were not done dishonestly or with the intent to purposefully mislead the Capital Bank & Trust Company. It is felt that it is inconceivable that an attorney would, in bad faith, render a false title opinion while being subject to $100,000 in loans being demanded and ‘called’ for, losing legal business and otherwise intentionally ruining the then good relationship with Capital Bank.” (Emphasis provided.)

. The Commissioner recited the following legal principles:

“Louisiana State Bar Association Articles of Incorporation, Article 16 (EC9-6) provides:
‘Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and the judges thereof; to observe the *757 code of professional responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with his brother lawyers in supporting the organized bar through the devoting of his time, efforts and financial support as his professional standing and ability reasonably permit; to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.’ (Emphasis added.)
“In the case of Louisiana State Bar Association vs. Emmette Batson, 359 So.2d 70 (La. 1978), the Supreme Court, through Chief Justice Sanders, at 359 So.2d 73 stated:
‘Attorneys in this State are held to a very high standard of conduct. An attorney must avoid the appearance of impropriety as well as impropriety itself.’ (Citing numerous cases.) (Emphasis added.)
“In the case of Brasseaux vs. Girouard, 214 So.2d 401 (La.App. 3rd Cir. 1968), writ refused, then Judge and now Justice Tate, speaking for the Court of Appeal as found at 214 So.2d 404, stated as follows:
‘As an inherent attribute of his profession, an attorney may not represent different interests which are hostile, or in conñict with one another. The Cannons of Ethics of both national and state bar associations forbid the representation of conflicting interest, except with consent of opposing parties and then only in limited circumstances. They further provide that the obligation to represent the client with undivided fidelity outlasts the lawyers employment.’ (Emphasis added.)
“Bad faith, fraudulent purpose, negligence, action, or inaction may be elements justifying disciplinary action by the Louisiana Supreme Court. Louisiana State Bar Association vs. Ruiz, 261 La. 409, 359 [259] So.2d 895, 899 (1972).
“The primary objective of disciplinary action is to protect the courts and the public. No greater penalty should be imposed than that which is required to accomplish this purpose. Louisiana State Bar Association vs. Stinson, 368 So.2d 791, [971] 794 [974] (La.1979).
“Louisiana State Bar Association Disciplinary Rule DR1-102 dealing with ‘Misconduct’, states as follows:
‘(A) A lawyer shall not (1) violate a disciplinary rule; (2) circumvent a disciplinary rule through actions of another; (3) engage in illegal conduct involving moral turpitude; (4) engage in conduct involving dishonesty, fraud, deciept, or misrepresentation; (5) engage in conduct that is prejudicial to the administration of justice; (6) engage in any other conduct that adversely reñects on his fitness to practice law.’ (Emphasis added.)
“Disciplinary Rule, DR5-101 dealing with ‘Refusing employment when the interest of the lawyer may impair his independent professional judgment’ states as follows:
‘(A) Except with the consent of client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interests.’ (Emphasis added.)
“Disciplinary Rule, DR6-101 dealing with ‘Failing to Act Competently’ states as follows:
‘(A) A lawyer shall not (1) handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it; (2) handle a legal matter without preparation adequate in the circumstances; (3) neglect a legal matter entrusted to him.’ ” (Emphasis added.)

. La.Civil Code art. 1847 provides in pertinent part:
“Fraud as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other." (Emphasis provided.)