421 So.2d 831 (1982)
LOUISIANA STATE BAR ASSOCIATION
v.
August J. BUBERT.
No. 81-B-0093.
Supreme Court of Louisiana.
October 18, 1982.
Rehearing Denied November 19, 1982.
Thomas O. Collins, New Orleans, Sam J. D'Amico, Louisiana State Bar Ass'n, Baton Rouge, for relator.
August J. Bubert, Metairie, John R. Martzell, New Orleans, for respondent.
DIXON, Chief Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, brought this disciplinary proceeding against August J. Bubert, a member of the Louisiana Bar who has been practicing for twenty-three years. The committee conducted an investigation of the alleged misconduct on the part of the respondent, and after a hearing, in accordance with Rule XVI of this court and Article XV, § 6 of the Articles of Incorporation of the Louisiana State Bar Association, the committee was of the opinion that the respondent had violated the Code of Professional Responsibility. Specifically, the committee found that the respondent had failed to represent his client competently by neglecting a legal matter entrusted to him in violation of DR 6-101(A)(3)[1] and DR 1-102.[2] The committee also found that he issued a check without sufficient funds (for the payment of a malpractice settlement) and failed to make the check good, despite repeated requests, in violation of DR 1-102.
The first complaint, Specification # 2, against the respondent involves the manner in which he handled a client's (Mr. Joseph Carruth) personal injury and workmen's compensation claims for the loss of his left *832 leg. The client's accident occurred on January 6, 1973. At the time of the accident Mr. Carruth was employed by the City of New Orleans as a garbage collector. He was standing behind a garbage truck when a car behind the truck struck him from the rear. As a result of the accident Mr. Carruth's left leg had to be amputated below the knee and he suffered a fractured right tibia. Thus, Mr. Carruth had both a tort claim against the driver of the car, Mr. Nick Slavich, and a workmen's compensation claim against the City of New Orleans. Allstate Insurance Company, the liability insurer of Mr. Slavich, offered to pay its policy limits of $10,000 and tendered this offer several times, as admitted by Mr. Bubert. Yet, Mr. Bubert allowed the tort claim to prescribe while he was attempting to negotiate a waiver from Charity Hospital of New Orleans as to all or part of its lien for medical expenses in the amount of $2220.50, and a settlement with the City of New Orleans as to its claims on the policy for workmen's compensation benefits. Additionally, Mr. Bubert never filed a workmen's compensation claim on behalf of his client against the City of New Orleans, and it is now doubtful whether that claim is still viable.[3]
Mr. Bubert has acknowledged that he neglected this case which was entrusted to him. He has also admitted that he never informed his client, Mr. Carruth, that his claim had prescribed. By means of a $30,000 settlement, Mr. Bubert has made restitution to Mr. Carruth. Since Mr. Bubert did not at the time carry malpractice insurance, he had to pay for this settlement by the issuance of a promissory note, and has secured the payment of this note by placing a second mortgage on his family home. The $30,000 settlement figure was reached by adding $10,000, the policy limits of the tortfeasor's[4] insurance, and $20,000, the computed disability benefits that Mr. Carruth would have been entitled to under the workmen's compensation statutes in effect at the time.
In connection with this first complaint, the committee is concerned with the client's assertions that Mr. Bubert continued to take the client, Mr. Carruth, to Civil District Court and always gave him a reason why the case was not tried on that date. Mr. Bubert denies this, and asserts that he was taking the client to the city attorney's office, which is in the building next to the Civil District Court in New Orleans, to discuss the City's workmen's compensation claim on the $10,000 insurance policy. Mr. Bubert suggests that since they often passed through the Civil District Court building on the way to the city attorney's office, Mr. Carruth may have been confused.
The committee is likewise concerned about Mr. Carruth's assertions that Mr. Bubert failed to return all of his file to him after repeated requests, and with Mr. Bubert's refusal to respond to the committee's letters requesting the return of the full file. Mr. Carruth asserts that he received only a partial file. Mr. Bubert testified that although he delayed in returning the file, he did return all of it to his former client, so that Mr. Carruth could retain counsel to pursue any claims he had. It should be noted that Mr. Carruth signed a statement when he received the file acknowledging his receipt of the file.
The second complaint, Specification # 3, involves an $800 compromise agreement from a suit filed against Mr. Bubert in March of 1979 for alleged malpractice. Mr. Bubert failed to satisfy this obligation for *833 two years; and, finally, in September of 1981, he paid the $800 in cash to the attorney for Mr. Bubert's former client, Mr. Sanderford. Mr. Bubert paid the attorney, Mr. Bonin, because Mr. Bubert had previously issued an $800 check which Mr. Bonin had deposited in his firm's fund established for paying clients. From this account, Mr. Bonin issued a check to Mr. Sanderford. Mr. Bubert's check was subsequently returned twice because of insufficient funds. Mr. Sanderford was unaware of the fact that the obligation had not been satisfied by Mr. Bubert until 1981. Mr. Bonin attempted to collect this amount from Mr. Bubert on several occasions and wrote several letters to him demanding payment, and he eventually contacted the committee and informed them of this matter. The committee found that Mr. Bubert was in violation of DR 1-102 because of the delay in paying Bonin and because of his mishandling of this affair.
Mr. Bubert's reasons for the delay involve his poor health condition and his personal and financial problems. Mr. Bubert has suffered three heart attacks, and this reversal in his health understandably has adversely affected both his ability to practice law and his financial resources. Additionally, Mr. Bubert attributes the lengthy delay to the fact that he was under the mistaken impression that his associates had paid the $800 obligation.[5]
The committee sent Mr. Bubert several letters pertaining to these complaints, but he did not respond. Yet, when the committee subpoenaed him he did respond and appear, and has since cooperated with the committee. It should be noted that Mr. Bubert has acted to rectify the situations which he created and has verbally expressed to the committee and this court his remorse for his shortcomings as an attorney.
On May 14, 1980 the committee held a formal investigatory hearing and after the hearing petitioned this court for the appointment of a commissioner. Stewart E. Niles, Jr. was appointed as commissioner to hold a hearing and to report to this court. The commissioner held the hearing on September 25, 1981; respondent was represented by Mr. John R. Martzell. The commissioner and the committee found that the respondent had violated DR 1-102 and DR 6-101(A)(3), and recommended that Mr. Bubert be suspended from the practice of law for one year.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct in order to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. Louisiana State Bar Association v. Causey, 393 So.2d 88, 92-93 (La.1980). See Louisiana State Bar Association v. Quaid, 368 So.2d 1043 (La.1979); Louisiana State Bar Association v. Bensabat, 378 So.2d 380 (La.1979); Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 (1972); Louisiana State Bar Association v. Ruiz, 261 La. 409, 259 So.2d 895 (1972). The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances peculiar to each case. These will be examined in light of the purpose of lawyer discipline, and the court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Causey, supra; Louisiana State Bar Association v. Bensabat, supra.
Mr. Bubert has formally admitted his negligence and poor handling of these two matters to the committee and to this court. It does not appear that the respondent previously has been charged with unprofessional conduct. It is recognized that Mr. Bubert *834 is currently suffering severe physical, personal and career distress. Further, the humiliation and embarrassment which the respondent has suffered are themselves a severe penalty. However, "[P]rocrastination and inattention can have effects upon the client that are just as disastrous as if dishonesty were involved...." Louisiana State Bar Association v. Causey, supra at 93. See State of Florida ex rel. The Florida Bar v. Graves, 153 So.2d 297 (Fla.1963).[6]
We agree with the commissioner and the Committee on Professional Responsibility that the respondent, August J. Bubert, violated DR 1-102 and DR 6-101(A)(3) of the Code of Professional Responsibility. The commissioner and the committee have taken the respondent's recent difficulties into consideration in recommending that he be suspended from the practice of law for a period of one year. Allowing a client's claim to prescribe is a serious act which demonstrates a flagrant violation of the trust a client has placed in his lawyer. Thus, a penalty which will deter other lawyers from similar breaches of the conduct demanded by the Code of Professional Responsibility should be imposed.
For these reasons, the recommendation of suspension from the practice of law for one year is approved.
It is therefore ordered that August J. Bubert, respondent herein, be suspended from the practice of law in the State of Louisiana for the period of one year, and be cast with the costs of these proceedings.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
I concur in imposing a one-year suspension, because respondent failed to make an immediate and full disclosure to his client that he had let the claims prescribe. The only apparent reason for not doing so was to "cover up" the negligence in the hope that the client would not pursue a malpractice claim.
NOTES
[1] "(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
(2) Handle a legal matter without preparation adequate in the circumstances.
(3) Neglect a legal matter entrusted to him." DR 6-101.
[2] "(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law." DR 1-102.
[3] Mr. Carruth received $49.00 a week in workmen's compensation benefits after the accident until he returned to work for the City of New Orleans as a night watchman in the Sanitation Department's yard at his previous salary. He later resigned from his job with the City and now works for Delgado College as a janitor at a lesser salary. See R.S. 23:1209 (1964 and Supp.1981).
[4] Mr. Dittman, the present attorney for Mr. Carruth, testified that he investigated Mr. Slavich's (the tortfeasor) financial condition and discovered that he had a lot of debts and very few, if any, assets. Therefore, the only thing that he felt Mr. Carruth could recover for his tort claim was the insurer's policy limit of $10,000.
[5] Mr. Bubert testified that he did not know that the $800 had not been satisfied by his associates until a week before the commissioner's hearing, when he called his associates for a copy of the canceled check. Once he learned that it had not been paid he immediately called Mr. Bonin and asked him to come to his home as Mr. Bubert did not feel well. When Mr. Bonin went to Mr. Bubert's home, Mr. Bubert paid him the $800 in cash, and mentioned that he felt obliged to pay Mr. Bonin interest.
[6] In recognizing this same distinction, the Florida Supreme Court in State of Florida ex rel. The Florida Bar v. Graves, 153 So.2d 297, 298 (1963), stated:

"We have reviewed the record thoroughly and we find no showing of moral turpitude or corrupt motive. We do find that respondent procrastinated, was careless and inattentive to his duty; he neglected to keep his client informed as to the state of his business and that he grossly neglected his trusteeship and sense of responsibility to his client.
Such neglect of duty is annoying and very disappointing to a client but certainly it should not be classed as corrupt and deserving of the degree of condemnation as acts involving moral turpitude. There is no statute that measures the punishment for such offenses. They are governed and punished by rules of the profession but in the application of them, the court is controlled by mercy and discretion and such other factors as the circumstances of the case warrant. No more serious responsibility confronts this court than a challenge to the professional conduct of an attorney. As we have said before, our answer must be just to the public, must be designated to deter others from engaging in like tendencies; it must be fair to respondent and aim at correcting any antisocial tendencies on his part; then the paramount duty in the whole affair is the court's duty to society."