DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted two proceedings against C. Monk Simons III, a member of said association. Prior to the commencement of each proceeding, the committee had conducted investigations of respondent’s alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the first proceeding, No. 85-B-0906, which involved four specifications of misconduct, was sent to respondent by certified mail dated August 1, 1984. Notice of the second proceeding, No. 85-B-1562, which contained two specifications of misconduct, was sent by certified mail dated April 15, 1985.
The committee held the formal investigative hearing on three of the four specifications set forth in No. 85-B-0906 on November 16, 1984, as provided in article 15, section 3(b) of the articles of incorporation. The committee specifically abandoned specification number 1. Respondent was present but did not testify on his own behalf. He was represented by John R. Martzell. Based upon the evidence adduced at this hearing, the committee was of the unanimous opinion that respondent had violated the laws of the state relating to the professional conduct of lawyers and to the moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in specifications 2, 3 and 4. On May 9, 1985, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. The court, by order, then appointed Mr. Owen J. Bradley as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
*937 The committee conducted the formal investigative hearing on the two specifications of misconduct set forth in No. 85-B-1562 on May 10,1985. After reviewing the evidence presented at this hearing, the committee was of the unanimous opinion that respondent had violated the laws of this state relating to the professional conduct of lawyers and to the moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in specifications 1 and 2. The committee filed a petition for disciplinary action with this court on July 30, 1985. Respondent filed an answer to this petition. The court appointed Mr. Bradley as commissioner and consolidated this matter with No. 85-B-0906 for a commissioner’s hearing.
A hearing before the commissioner was held on January 18, 1986. Respondent and his attorney were present. The committee introduced in evidence the entire record of the earlier investigative hearings whereupon the committee rested its case subject to any cross-examination. Respondent presented two character witnesses on his behalf, as well as the affidavits of two other persons. The commissioner filed with this court his written report on April 15, 1986, wherein he stated his findings of fact and conclusions of law. The committee concurred with some of the commissioner’s findings but opposed others. In its brief to this court the committee recommended that we consider disbarring respondent from the practice of law. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
The following allegations of misconduct have been made in No. 85-B-0906.
Specification No. 2 alleged:
That in your capacity as an attorney of law, you represented Schwegmann Brothers Supermarket. A false imprisonment suit was filed by Irma Hodges against your client, Schwegmann Brothers Supermarket. Judgment was rendered against Schwegmann Brothers, your client, in Civil District Court, Parish of Orleans on May 14, 1980. The Fourth Circuit [Court] of Appeal upheld the decision of the trial court, against your client, Schwegmann Brothers. In accordance with the judgment, your client, Schwegmann Brothers, issued a check dated December 7,1981, made payable to you, as their attorney, in the sum of FIVE-THOUSAND THREE-HUNDRED AND EIGHTY-FIVE DOLLARS ($5,385.00). Said check was given to you by Schwegmann Brothers to furnish the proceeds to Irma Hodges and her attorney, in accordance with the judgment. You received said check and failed, refused and neglected to transmit said monies to Irma Hodges and her attorney. Due to your neglect in transmitting said funds to the rightful owner, as set forth above, your client, Schwegmann Brothers, issued another check to Irma Hodges, two years later, in December of 1983. The above conduct is in violation of Disciplinary Rule 1-102,[1] Disciplinary Rule 6-101(A)(3) [2] and Disciplinary Rule 9-102(B)(3)[ *938 [3]]of the Code of Professional Responsibility of the Louisiana State Bar Association.
It is further alleged that you did commingle and convert said funds to your own use, as evidenced by your receipt of the check in the sum of FIVE-THOUSAND THREE-HUNDRED AND EIGHTY-FIVE DOLLARS ($5,385.00), your refusal to furnish the funds to the rightful owner and your failure to furnish the Committee with documentary evidence to indicate that these funds were held in trust, despite many requests to do so, all in violation of Disciplinary Rule 1-102 and 9-102(A)(B), of the Code of Professional Responsibility of this Association.
Evidence submitted at the investigative hearing established that a judgment was rendered in favor of Irma Hodges and against Schwegmann Brothers in the civil district court on May 14, 1980. The decision was affirmed by the court of appeal. A rehearing was refused on January 21, 1982. The in-house counsel for Schweg-mann Brothers issued a check to respondent, counsel for Schwegmann Brothers, for $5,385.00 on December 7,1981, for payment to Mrs. Hodges in satisfaction of the judgment. However, Mrs. Hodges never received payment from these funds. Her lawyer tried unsuccessfully for over a year to collect the funds from respondent. Finally, Mrs. Hodges filed a complaint with the Committee on Professional Responsibility against her own attorney because of her inability to collect her judgment. Mrs. Hodges also filed a complaint with the New Orleans District Attorney’s office. That investigation culminated in Schwegmann Brothers’ issuing another check for $6,318.00 to Mrs. Hodges on December 19, 1983, some two years after issuance of the original check to respondent. The increased amount of the second check was due to additional accrued interest. Schwegmann Brothers then accepted a demand note from respondent for $6,318.00 of which $1,000.00 had been paid at the time of the hearing. Respondent offered no evidence to refute or explain any of the facts established by the evidence introduced at the hearing.
The commissioner found that respondent advanced no evidence indicating that he did not convert these funds to his own use. In-house counsel testified that respondent admitted owing the money to Schwegmann Brothers. This debt is further evidenced by his execution of the note in favor of Schwegmann Brothers. Only partial restitution has been made. The commissioner concluded that the committee proved this specification in its entirety.[4] We concur with the commissioner, concluding that respondent commingled and converted the funds of his client, Schwegmann Brothers, in violation of DR 9-102(A)(B) and that he neglected a legal matter entrusted to him *939 in violation of DR 6-101(A)(3). Respondent also violated DR 1-102.
Specification No. 3 alleged:
That in your capacity as an attorney of law, you were retained in 1978 by Rose Henning to complete the succession of her grandparents and brother. Despite repeated demands by your client, Rose Henning, she was unable to obtain the status of the successions you were handling on her behalf. Your client, Rose Henning, therefore obtained the services of another attorney, Charles Barbera, in December of 1982, to complete the successions. Over a period of five (5) years, you failed to file any pleadings in connection with these successions. The Committee is of the opinion that the above conduct is in violation of Disciplinary Rule 6-101(A)(3) and Disciplinary Rule 7-101(A)(2) [5] of the Code of Professional Responsibility of this Association.
Your client, Rose Henning, the Admin-istratix [sic] of the successions you were hired to handle, furnished you with cash assets during the years of Í978 and 1979 totaling $13,879.64. Despite repeated requests by your client, Rose Henning, to furnish these assets to her, you have failed, refused, and neglected to transmit said funds to your client. It is further alleged that you did commingle and convert the sum of $13,879.64, as evidenced by your receipt of the sum of $13,789.74, [sic] your refusal to furnish said funds to your client and your failure to furnish the Committee with documentary evidence to indicate that these funds were held in trust, despite repeated demands to do so, all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102(A)(B), of the Code of Professional Responsibility.
At the investigative hearing, Mrs. Hen-ning testified that she hired respondent in 1978 when her brother was killed to handle his succession and to investigate the circumstances surrounding his death. She also sought advice on the procedure necessary to confine her grandmother to a nursing home. When her grandmother died about three months later, respondent was also to handle that succession. Although evidence of various papers and pleadings prepared by respondent was introduced, there was no indication that any of these pleadings were filed in district court during the five years in which respondent represented Mrs. Henning. One of Mrs. Hen-ning’s principal complaints was that respondent never completed the sale of a piece of real estate in her grandmother’s succession as desired by the heirs. There was some evidence of a dispute by the heirs as to the appropriate sale price of the property. However, after Mrs. Henning enlisted the services of another attorney in late 1982 to complete the sale of the property, that attorney completed the sale in about five months.
Mrs. Henning stated that she furnished respondent with various assets and funds in connection with the successions. She could not recall how much or what types of assets were transferred to respondent nor did she have documentary evidence of any payments to respondent except for a can-celled cashier’s check for $1,500.00[6] and a *940 receipt for $1,481.77.[7] However, evidence of a letter and an attached worksheet written by respondent to the state bar association was introduced in which respondent submitted an accounting of assets received by him in connection with the Henning successions. The worksheet shows a receipt of $12,379.64[8] from 1978 through 1979. Respondent did not challenge the authenticity of the document. Immediately upon being retained by Mrs. Henning, her new attorney made demand on respondent for the return of all succession assets in his possession. When the assets were not returned as demanded, a civil suit was instituted against respondent for their return. Respondent has reconvened in that suit for $6,000.00 in attorney fees.
The commissioner found that specification 3 had not been proved.[9] He concluded that respondent’s failure to file any pleadings in connection with the successions did not constitute neglect in violation of DR 6-101(A)(3) and DR 7-101(A)(2). He also found that the record did not establish the amount and type of succession assets turned over to respondent to support the committee’s allegation of commingling and conversion of $13,879.64 by respondent in violation of DR 9~102(A), (B). We disagree with the commissioner. We find that the committee proved that respondent violated DR 6-101(A)(3) and DR 7-101(A)(2) by failing to provide any significant identifiable service to his client over a period of five years of representation. The successions could not have been unduly complex if the attorney hired to complete them had substantially done so within a matter of months of his being hired. Mrs. Henning’s current attorney testified that the succession matters are wound up except for the civil suit pending against respondent for the return of the successions’ assets. We believe that the committee also sustained its burden of proving that respondent commingled and converted succession assets furnished to him. Respondent furnished the state bar association with an accounting of assets received by him in connection with the Henning successions as reflected by his own records in the matter. We consider that respondent’s admission of the receipt of $12,379.64, his failure to furnish the committee with documentary evidence to indicate that these funds were held in trust and his failure to return these funds after demand to their rightful owner proves the commingling and conversion of $12,379.64[10] of succession assets in violation of DR 9-102(A), (B). Respondent also violated DR 1-102.
Specification No. 4 alleged:
That you were retained by Joshua Mazer in July of 1983, concerning the termination of his marriage. In connection therewith, you advised Joshua Mazer, that an annulment would be the best course of action to terminate the marriage. Your client, Joshua Mazer, paid you a fee of $250.00 plus $85.00 court costs for the annulment. You advised your client that the annulment could be brought to court within three (3) weeks. In November of 1983, your client requested that you withdraw as Counsel of Record, as the only service that you performed was to draw up a three (3) page Annulment Petition. Your client and his wife retained another attorney and obtained a legal separation within three (3) *941 weeks. The Committee is of the opinion that the above conduct is in violation of Disciplinary Rule 1-102 and Disciplinary Rule 6-101(A)(3).
It is further alleged that your client, Joshua Mazer, furnished you with the sum of $1900.00 on August 26, 1983, to be held in trust as settlement to be given to his wife, when the marriage was terminated. After you were dismissed as Counsel of Record, your client, Joshua Mazer, demanded the return of the sum of $1900.00 whch [sic] was given to you to be held in trust. You avoided your client for approximately one (1) week and finally set up an appointment with your client’s wife to return the money.
You offered your client’s wife the sum of $500.00 instead of the entire amount of $1900.00 which was given to you to be held in trust. Your client’s wife refused the sum of $500.00, demanding the entire $1900.00. One week after the money was demanded by your client, you did furnish the sum of $1300.00 to your client and his wife, retaining $600.00 as legal fees. It is alleged that you did commingle and convert said funds to your own use, as evidenced by your re-ciept of the sum of $1900.00, your failure, refusal and neglect to transmit said funds to your client or his wife, the rightful owners thereof upon demand and your failure to furnish the Committee with documentary evidence to indicate that these funds were held in trust, despite many requests to do so, all in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102(A) (B), of the Code of Professional Responsibility of this Association.
At the investigative hearing, Joshua Mazer testified that he retained respondent to handle the termination of his marriage. On recommendation of respondent, Mr. Mazer sought an annulment of the marriage. A fee of $250.00 plus $85.00 in court costs was paid to respondent by Mr. Mazer. Respondent filed suit for the annulment but it was never obtained. Mr. Mazer testified that he furnished to respondent $1,900.00 to be kept in trust for his wife as a partial settlement for her on termination of their marriage. Subsequently, Mr. Mazer demanded that these funds be returned to him. About a week after he demanded these funds, .Mr. Mazer testified that $1,300.00 was returned to him and his wife, the balance being retained by respondent as attorney fees. Although Mr. Mazer testified that the retention of attorney fees was without authorization, evidence of an itemized bill from respondent to Mr. Mazer was introduced showing a $555.00 balance of attorney fees due, not including a $250.00 charge which would be owing on the date of trial. Thereafter, a written agreement was signed by Mr. Mazer, his wife and respondent providing that $600.00 of the $1,900.00 originally furnished would be retained by respondent as attorney fees. The $600.00 fee was to cover the $555.00 due as per the itemized bill plus a partial payment on the $250.00 amount due on the date of trial. Mrs. Mazer acknowledged receipt of the $1,300.00. A short time later, Mr. Mazer released respondent and hired another attorney. Mrs. Mazer did not testify at the hearing respecting the allegation that respondent offered her $500.00 in lieu of the entire $1,900.00 originally furnished to him.
The commissioner found that specification 4 had not been proved.[11] He concluded that the record reflected evidence of services performed by respondent including several conferences with Mr. and Mrs. Mazer. He did not believe that a one-week delay in delivering the funds demanded was unreasonable under the circumstances. We agree with the commissioner’s findings. Evidence is insufficient to prove that respondent neglected his duties in violation of DR 6-101(A)(3). In addition, commingling and conversion of his client’s funds in violation of DR 9-102(A), (B) were not proven by the committee. We also find that respondent did not violate DR 1-102 in this matter.
*942 The following specifications of misconduct were made in No. 85-B-1562:
Specification No. 1 alleged:
That you were retained on or about June 29, 1978 by Eastern Airlines in connection with a collection matter against Curtis and Davis and paid the sum of approximately $2,080.00 by Eastern Airlines, representing legal fees. Curtis and Davis was a New Orleans company which later became defunct. Daniel, Mann, Johnson and Mendenhall, in the later 1970’s, subsequently obtained many accounts of the defunct Curtis and Davis Company. In connection with your representation of Eastern Airlines, you received a check dated April 28,1981 in the amount of $47,825.58, made payable to Eastern Airlines and yourself, which was issued on behalf of Curtis and Davis, by Hammett, Leake and Hammett, attorneys for Curtis and Davis. You negotiated said check and did commingle the entire $47,825.58 with your own and convert that sum to your own use, all in contravention of Disciplinary Rule 1-102 and Disciplinary Rule 9-102(A) (B), of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specificiation No. 2 alleged:
That in connection with your receipt of said funds in the amount of $47,825.58 and the subsequent commingling and conversion thereof, it is further alleged that in September of 1983, almost two and a half years after you received the sum of $47,825.58, your client, Eastern Airlines, had not received the proceeds of the settlement of $47,825.58 and therefore hired Stephen J. Folkman, Attorney at Law, in order to obtain said proceeds from you. A promissory note was subsequently effected on April 6, 1984 between you and Eastern Airlines Inc., in the amount of $47,825.58. In accordance with the terms of said promissory note, you have to date paid only $5,691.18 and have failed to pay to your client, Eastern Airlines, the monthly installments agreed to. Further, that taking into account, the payment of $5,691.18 to your client as well as a $2500.00 credit, representing legal fees, as of this date, you still owe your client, Eastern Airlines, the sum of $39,634.00, plus interest and attorney fees. To date, you have failed, refused and neglected to furnish your client, Eastern Airlines, with the total sums due, all in violation of Disciplinary Rule 1-102, Disciplinary Rule 6-101(A)(3) and Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility of the Louisiana State Bar Association.
At the investigative hearing, it was established that respondent represented Eastern Airlines in the Curtis and Davis collection matter. Respondent also confirmed by a letter introduced in evidence his receipt of $47,825.58 from Curtis and Davis on behalf of Eastern Airlines. At the hearing, counsel for respondent stipulated that the $47,825.58 check dated April 28, 1981 made payable jointly to Eastern Airlines and to respondent was commingled with respondent’s personal funds and was converted to his own use. The cancelled check introduced in evidence reveals that respondent indorsed the instrument both as agent for Eastern Airlines and on his own behalf. Respondent admitted owing Eastern Airlines the funds which he originally collected on its behalf. A promissory note for $47,-825.58 dated April 6, 1984, executed by respondent to Eastern Airlines was introduced in evidence. The commercial credit and collections manager for Eastern Airlines testified that $5,691.81 had been paid on the note; additionally, the note contained a $2500.00 credit for attorney fees, leaving a balance of $39,634.00 owed by respondent to Eastern Airlines. Evidence of correspondence between respondent’s attorney and Eastern Airlines and its New Orleans counsel in late 1983 and 1984 indicates that respondent had been experiencing professional and personal difficulties since the time the monies were originally collected on behalf of Eastern Airlines.
The commissioner found that specifications 1 and 2 of 85-B-1562 had been *943 proved.[12] We agree with the commissioner’s finding. Respondent has commingled, converted and refused to repay $47,825.58 of funds belonging to his then client, Eastern Airlines, thereby violating DR 1-102, DR 6-101(A)(3) and DR 9-102(A), (B).
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
Having found respondent guilty of four specifications of misconduct, we consider that disciplinary action is warranted. Respondent was found guilty of the serious violations of commingling and converting funds belonging to three of his clients, namely, Schwegmann Brothers Supermarket, Mrs. Rose Henning and Eastern Airlines. Only partial restitution has been made in two of these cases and none in the other case. Respondent’s attorney proposed that this court institute a program of peer monitoring so that an attorney who goes astray but who is still useful to the community in his profession would not be totally foreclosed from practice. We believe that even were this court to institute such a program, respondent’s case would not be one to merit inclusion therein. Considering the general guidelines set forth in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), we consider that disbarment is the appropriate penalty under the circumstances of this case.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that the name of C. Monk Simons III be stricken from the roll of attorneys and his license to practice law in Louisiana be cancelled. Respondent is to bear all costs of these proceedings.

. DR 1-102 provides in relevant part that:
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6)Engage in any other conduct that adversely reflects on his fitness to practice law.

. DR 6-101 provides that:
(A) A lawyer shall not:
(1) Handle a legal matter which he is not competent to handle, without associating with him a lawyer who is competent to handle it.
(2) Handle a legal matter without preparation adequate in the circumstances.
(3) Neglect a legal matter entrusted to him.

. DR 9-102 provides in relevant part that:
A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

.The committee concurred in this finding.

. DR 7-101(A) provides that:
(A) A lawyer shall not intentionally:
(1)Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

, Mrs. Henning testified that the $1,500.00 was furnished to respondent as a cash deposit for a bond. There is a handwritten notation on the check, "Cash Deposit for Bond,” written by Mrs. Henning.

. This document, signed by respondent, acknowledged receipt of miscellaneous papers, a glass bottle containing a watch, and United States coins and dollar bills totaling $1,481.77.

. The total of $12,379.64 was broken down by the source or type of receipt and the date received. It included cash and coins of $1,481.77, social security receipts totaling $730.44, a savings account of $911.08, union and life insurance receipts totaling $3,120.56 and school board and retirement system payments totaling $6,135.79.

. The committee disagreed with this finding.

. Our finding that respondent commingled and converted $12,379.64 is based primarily upon respondent’s own accounting of assets he received in connection with the Henning successions. The committee alleges that respondent commingled and converted $13,879.64 or $1,500.00 more than the amount which this court believes has been proven against respondent.

. The committee disagreed with this finding.

. The committee concurred in this finding.