513 So.2d 1178 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Robert P. CHATELAIN.
No. 87-B-0253.
Supreme Court of Louisiana.
October 19, 1987.
Rehearing Denied December 10, 1987.
*1179 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe, Metairie, for applicant.
Robert P. Chatelain, Metairie, William P. Quigley, New Orleans, for respondent.
WATSON, Justice.
This is a disciplinary proceeding by the Louisiana State Bar Association against one of its members, Robert P. Chatelain, in which the Supreme Court of Louisiana has original jurisdiction.[1]

FACTS
On October 31, 1985, Chatelain acted as the Notary Public on a sale of immovable property from Urban Property Company to Louis V. Nugent. The purchase price for the property was $54,000, which was received by Chatelain from the purchaser. The net amount due to the seller after expenses was $52,685. On October 31, 1985, a check for that amount was drawn by Chatelain from the "Robert P. Chatelain, Notarial Account" with the Crescent City Bank. The check, made payable to the seller's bank, was returned for insufficient funds when presented in mid-November. Two weeks later the check was presented for a second time and again returned unpaid for insufficient funds. Despite the seller's demand, respondent refused to make the funds available or honor the check.
A civil suit was filed on December 20, 1985, in the Civil District Court for the Parish of Orleans, entitled "Urban Property Company v. Robert P. Chatelain, Louis V. Nugent, and Crescent City Bank," bearing docket number 85-21685. On May 1, 1986, a consent judgment was rendered against Chatelain for $58,505.19. On May 28, 1986, a second judgment was rendered against his malpractice insurance *1180 carrier. The seller executed a "Release and Satisfaction of Judgment" dated October 8, 1986.
The Louisiana State Bar Association's Committee on Professional Responsibility charged Chatelain with two specifications of misconduct. Specification number one alleged that Chatelain failed to maintain and properly disburse the funds tendered to him, in trust, for the act of sale; engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation which adversely reflected on his fitness to practice law; and converted client funds to his own use. These charges allege violations of Disciplinary Rules 1-102(A)(4), (6)[2] and 9-102[3] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Specification number two alleged that Chatelain failed to maintain his notarial account in a proper manner and used it as an operating account. Chatelain was charged with failing to maintain complete and proper records of his client's funds. These charges allege a violation of Disciplinary Rule 9-102[4] of the Code of Professional Responsibility.
Hearings were held before the Committee on September 8, 1986, October 17, 1986, and November 17, 1986. Respondent appeared at each and was represented by his counsel, William P. Quigley. In the course of these proceedings, a subpoena duces tecum was directed to respondent to produce certain records and documents. Respondent opposed this production and filed a Motion to Quash based on an assertion of his Fifth Amendment right against self-incrimination. The motion was denied by the Bar Association's hearing examiners, and respondent filed a writ of review which was denied.
Respondent produced the requested bank records which consisted of the checks, monthly statements and receipts from the trust account but persisted in his efforts to suppress the evidence. A majority of the Committee concluded that respondent was guilty of the misconduct described in the two specifications.
A petition was filed against respondent on February 3, 1987, and John M. Currier was appointed Commissioner to make findings of fact and conclusions of law. Respondent's motion to suppress his records was denied by the Commissioner and also *1181 by this court. A hearing was held before Commissioner Currier on May 11, 1987, and the documents were introduced subject to a reservation by respondent, who again asserted his Fifth Amendment right against self-incrimination. Invoking that right, he also refused to testify in his own behalf.
The Commissioner found that respondent received funds on October 31, 1985, which should have been immediately transferred to the seller of the immovable property. In spite of constant demands and a civil lawsuit, he did not produce the funds until October 8, 1986. The deposits in the notarial account did not contain enough information to indicate the source of the funds, but checks were written to pay other obligations. The Commissioner found that respondent converted and commingled funds belonging to another for his own use for a period of one year, a violation of Disciplinary Rules 1-102(A)(4), (6) and 9-102. Respondent also violated Disciplinary Rule 9-102 by failing to maintain complete and proper separation of a client's funds in a separate notarial account.
As to the self-incrimination issue, the Commissioner noted that disbarment proceedings are not criminal in nature. Louisiana State Bar Association v. Ruiz, 261 La. 409, 259 So.2d 895 (La., 1972). Citing Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) as authority that an attorney may not be disbarred for refusing to testify or produce records on the grounds that there may be a violation of his Fifth Amendment right against self-incrimination, the Commissioner noted that cases decided after Spevack recognize that "the privilege against self-incrimination is applicable only when the testimony or documents sought would subject the attorney to criminal prosecution or would otherwise be incriminating."[5] Here, the Committee does not seek to punish respondent for his refusal to testify or produce records, as in Spevack, but because he converted and commingled his client's funds.
Additionally, the Commissioner found the wording of Disciplinary Rule 9-102 suggests that the records which respondent refused to produce fall squarely under the "required records doctrine" enunciated in Shapiro v. U.S., 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948) which provides an exception to the privilege against self-incrimination. This situation was alluded to in Spevack.
The Commissioner found sufficient evidence of conversion and commingling. After Chatelain refused to cooperate with the Committee or the Commissioner and also refused to testify, he was given an opportunity to supplement the record with letters or other evidence in mitigation. There was no mitigating evidence. When respondent delayed restitution, the conversion became intentional. The seller was denied use of the funds for a year and the buyer, named in the civil suit, incurred the cost of defense. The Commissioner found respondent acted in bad faith and recommended a three year suspension from the practice of law. The Committee on Professional Responsibility of the Louisiana State Bar Association concurs in the recommendation.

LAW
Respondent relies solely on Spevack v. Klein, supra, where a disbarment proceeding was brought against a member of the New York bar. Although various charges were initially brought against him, only the attorney's refusal to honor a subpoena duces tecum and his refusal to testify, based on his Fifth Amendment privilege against self-incrimination, survived. The New York Supreme Court ordered the attorney disbarred, holding the constitutional privilege was not available to a lawyer under Cohen v. Hurley, 366 U.S. 117, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961). The United States Supreme Court reversed, holding an attorney could not be disbarred solely for relying on his privilege against self-incrimination and refusing to honor a subpoena duces tecum. The Supreme Court also held *1182 that the attorney could not be disbarred where, by invoking his right against self-incrimination, he was unable to make a record that the documents requested were private and not within the "public record rule" of Shapiro v. U.S., supra, which provides an exception to the right to refuse production of documents where the records are required to be kept by law.
In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) held that disbarment proceedings are quasi-criminal adversary proceedings. Attorneys are entitled to procedural due process, which includes fair notice of the charges brought against them and an opportunity to be heard. Despite these privileges, disciplinary proceedings brought against members of a state bar are not criminal and the full panoply of a criminal defendant's rights are not available to an attorney in a bar disciplinary case.
State courts faced with the question of whether the Fifth Amendment privilege applies to compulsory production of documents in attorney disciplinary proceedings have devised various methods to deal with the problem of balancing an attorney's individual rights with the right of the bar to police and maintain the professionalism of its members. State v. MacIntyre, 41 Wis.2d 481, 164 N.W.2d 235 (1969) held that the privilege against self-incrimination protects the documents requested. Goldman v. State Bar, 20 Cal.3d 130, 141 Cal.Rptr. 447, 570 P.2d 463 (1977) compelled their production, finding an attorney not entitled to the same immunities as a criminal defendant. The Supreme Court of Illinois devised a new procedure, an extra judicial review step, in its bar disciplinary proceedings. In re Zisook, 88 Ill.2d 321, 58 Ill.Dec. 786, 430 N.E.2d 1037 (1981), cert. den. 457 U.S. 1134, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982). Several states have held that documents concerning a client's monies have a public aspect which places them outside the scope of the Shapiro privilege, the situation alluded to in Spevack. The Florida Bar v. White, 384 So.2d 1266 (Fla., 1980); In the Matter of Kenney, 399 Mass. 431, 504 N.E.2d 652 (1987); Andresen v. Bar Association of Montgomery County, 269 Md. 313, 305 A.2d 845 (1973), cert. den. 414 U.S. 1065, 94 S.Ct. 572, 38 L.Ed.2d 470 (1973).
In Louisiana, bar disciplinary proceedings are not criminal.[6] The Committee on Professional Responsibility is empowered by law to hold hearings on alleged misconduct of bar members.[7] Although these hearings have been analogized to grand jury proceedings, "[A]ll it [the Committee] does is find facts and decide whether there is a probability that an attorney has willfully violated the ethical code laid down by the profession."[8] A bar member in a disciplinary proceeding is not entitled to all the protections that a criminal defendant enjoys. Here, Chatelain was given proper due process notice of the charges against him and the opportunity to be heard.
Disciplinary Rule 9-102(B)(3) requires that a lawyer maintain complete records of all funds transmitted to him and render proper accountings to his clients. The Fifth Amendment privilege which applies to private documents cannot be applied to public documents "required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established."[9]Grosso v. U.S., 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) detailed three premises which categorize documents as "required records" under Shapiro: "[f]irst, the purposes of the [governmental] inquiry must *1183 be essentially regulatory; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and third, the records themselves must have assumed `public aspects' which render them at least analogous to public documents."[10]
The disciplinary rules are an appendix to the Louisiana Revised Statutes. The Legislature, by Act 54 of 1940, memorialized the Supreme Court "to exercise its inherent power" and provide for the organization and regulation of the Louisiana State Bar Association and the members thereof. Section 5 of this Act directed "that the rules promulgated by the Supreme Court shall be published in the Louisiana Reports...." The Supreme Court order of March 12, 1941, organized the Louisiana State Bar Association and made the articles of incorporation of the association the rules of the court by which the association is governed. The rules are found in Title 37, Chapter 4, Appendix. In re Jones, 202 La. 729, 12 So.2d 795 (1943); LSA-R.S. 37:211; Supreme Court Rule 19.
The records which were requested by subpoena duces tecum in this case meet the requirements of the "required records doctrine" enunciated in Shapiro. The Louisiana Supreme Court has sole authority over bar matters,[11] and "ultimate responsibility as to the discipline warranted by the facts."[12] "The state bar association is created and regulated under the rule-making power of this court, and its articles of incorporation, disciplinary proceedings, and code of professional conduct have been adopted as rules of this court. This adoption by rule is pursuant to the cited constitutional mandate and in accord with the inherent power of this court to prescribe rules and regulations governing the practice of law in the jurisdiction."[13] The Committee on Professional Responsibility, exercising a quasi-judicial function,[14] has the power to investigate alleged acts of misconduct and is granted subpoena power to compel attendance and documents necessary in that inquiry.[15] This inquiry is necessary for the regulation of the bar.
"The Disciplinary Rules are mandatory in character. They `state the minimal level of conduct below which no lawyer can fall without being subject to disciplinary action.' Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719, 737 (1975)."[16] The records kept pursuant to the disciplinary rule and requested by subpoena are the type regularly kept to comply with the professional rule requiring accurate accountings to clients. Additionally, "enforcement of DR 9-102(B)(3) implies a need to review the records required by that rule and, to that end, the board has been given subpoena power."[17]
While attorneys' records may not be public documents, they do have "public aspects" in that the public at large has an interest in the integrity of the profession and clients in particular have an interest in how an attorney handles money which belongs to them.
Here, in contrast to Spevack, the evidence supporting the monetary judgments against Chatelain and his malpractice insurer created a prima facie disciplinary case against him. The subpoenaed records only confirmed what had been established in the court proceedings.

CONCLUSION
The subpoenaed records were properly admitted in evidence and properly considered *1184 by the Commissioner. Respondent Chatelain deposited the purchaser's check but had insufficient funds in his notarial account when the check written to the seller was presented the first time, and a negative balance when the check was presented the second time. The various checks written on the account paid for items other than those benefiting respondent's clients. The Commissioner correctly found that the Committee on Professional Responsibility proved Chatelain guilty of violating Disciplinary Rules 1-102(A)(4) and (6) and Disciplinary Rule 9-102 by clear and convincing evidence. Louisiana State Bar Association v. McGovern, 481 So.2d 574 (La., 1986); Louisiana State Bar Association v. Simons, 495 So.2d 936 (La., 1986).
Chatelain's actions exhibit many elements found in a typical disbarment case. Louisiana State Bar Association v. Krasnoff, 488 So.2d 1002 (La., 1986); Louisiana State Bar Association v. Jordan, 375 So.2d 89 (La., 1979); Louisiana State Bar Association v. Philips, 363 So.2d 667 (La., 1978). He was guilty of more than mere negligence and benefited from his violation of the disciplinary rules. Compare Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La., 1986). The seller was seriously injured by not receiving the funds from the sale for a year and being required to file a civil suit, while the buyer was made defendant in the civil suit and forced to pay the cost of defense. Chatelain made restitution only through his insurer after a year had passed and he was cast in judgment. Considering these circumstances, the appropriate sanction is a disbarment.[18]
For the foregoing reasons,
IT IS ORDERED, ADJUDGED, AND DECREED that the name of Robert P. Chatelain, respondent herein, be stricken from the roll of attorneys and his license to practice law in the State of Louisiana be revoked effective on the date of the finality of this judgment. Respondent to bear all costs of this proceeding.
DIXON, C.J., concurs.
LEMMON, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by LEMMON, J.
LEMMON, Justice, dissenting.
This case presents a very close decision as to the penalty under the guidelines of Louisiana State Bar Association v. Hinrichs, 495 So.2d 943 (La.1986). The factors pointing to disbarment are the extensive duration (one year) of the deprivation of the client's funds and the fact that the client was required to resort to legal proceedings, with the attendant expenses, in order to recover the funds. The factors pointing to a three-year suspension are the absence of fraudulent acts in the conversion of funds and the fact that the client was not greatly harmed, receiving all of his funds after one year.
Because of the absence of fraud and the fact of full restitution, although not made until after legal action and disciplinary proceedings had been filed, I conclude that the three-year suspension recommended by the Commissioner and concurred in by the Bar Association is the appropriate remedy in this case.[1]
NOTES
[1] LSA-Const. 1974, Art. 5, § 5(B).
[2] Rule 1-102(A)(4) and (6) of the Code of Professional Responsibility provides:

"(A) A lawyer shall not:
* * * * * *
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
* * * * * *
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
[3] Rule 9-102 of the Code of Professional Responsibility provides:

"A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"1. Funds reasonably sufficient to pay bank charges may be deposited therein.
"2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
"1. Promptly notify a client of the receipt of his funds, securities or other properties.
"2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
"3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
"4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive. * *"
This rule was amended effective January 1, 1985, to include the rules governing the operation of interest-bearing trust accounts. Although the letter sent to respondent only mentioned violations of Disciplinary Rule 9-102, it is obvious that Section C. of the rule does not apply and respondent should have been more specifically charged with violating Sections A. and B.
[4] See Footnote 3.
[5] "Extent and Determination of Attorney's Right or Privilege Against Self-Incrimination in Disbarment or Other Disciplinary ProceedingsPost Spevack Cases." 30 ALR 4th 243, 251 § 5, a.
[6] Louisiana State Bar Association v. Ruiz, 261 La. 409, 259 So.2d 895 (1972).
[7] Articles of Incorporation, Art. XV, Section 3(b).
[8] Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 at 420 (1972), cert. den. 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972).
[9] Shapiro v. U.S., 335 U.S. 1 at 17, 68 S.Ct. 1375 at 1384, 92 L.Ed. 1787 (1948), citing Davis v. U.S., 328 U.S. 582 at 589, 66 S.Ct. 1256 at 1259, 90 L.Ed. 1453 (1946).
[10] Grosso v. U.S., supra, 390 U.S. at 67, 88 S.Ct. at 713, 19 L.Ed.2d at 912.
[11] LSA-Const. 1974, Art. V, § 5(B).
[12] Louisiana State Bar Association v. Edwins, 329 So.2d 437, 441 (La., 1976).
[13] Louisiana State Bar Association v. Edwins, supra, at p. 440.
[14] Noted in Louisiana State Bar Association v. Jacques, supra, 257 So.2d at p. 419.
[15] Articles of Incorporation, Article XV, Section 3(b).
[16] Louisiana State Bar Association v. Edwins, supra, at p. 442.
[17] In the Matter of Kenney, supra, 504 N.E.2d at p. 658.
[18] Prior to oral argument, respondent submitted a Petition for Voluntary Suspension in which he admitted the allegations charged against him in this disciplinary proceeding, the allegations charged against him in another pending case, and one of two allegations in still another pending disciplinary action. Respondent's request that he be suspended for a period of four years was referred to the merits and is denied.
[1] The disbarment cases relied on by the majority involved fraud or embezzlement in the conversion of the client's funds.