ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This attorney disciplinary proceeding arises from seven counts.of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Edward L. Henderson, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS

The Rendina Matter

Dr. Robert C. Rendina, a Ruston, Louisiana chiropractor, treated many of respondent’s clients in connection with personal injury cases. In late 1994 and early 1995, respondent reached settlements in the cases of four such clients, and retained funds from these settlements to pay Dr. Rendina. However, respondent failed to maintain these funds in his trust account and failed to promptly pay them to Dr. Rendina. Dr. Rendina eventually filed a complaint with the ODC. Thereafter, between June 1995 and June 1996, respondent paid the funds retained from the settlements of these four clients to Dr. Rendina.
In addition, the ODC requested that respondent provide evidence concerning settlements in the cases of five other clients who were treated by Dr. Rendina. Respondent failed to provide the requested information to the ODC regarding these clients.

The Humphrey Matter

Bertha Humphrey retained respondent to handle her late husband’s succession. In February 1993, Mrs. Humphrey gave respondent a money order in the amount of $11,891.49, representing an advance deposit against attorney’s fees and costs in the succession matter. Respondent failed to account to Mrs. Humphrey for these funds.
Earlier, in April 1992, Mrs. Humphrey had also entrusted $9,055 in cash to respondent for safekeeping. Respondent did not place these funds in a trust account, and did not make full restitution to Mrs. Humphrey until March 1996.
*525 DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed seven counts of formal charges against respondent. Four of these counts involved respondent’s failure to maintain the settlement funds of the four clients in the Rendina matter in a trust account, and his failure to remit these funds to the health care provider. Additionally, respondent was charged with one count of failure to cooperate due to his refusal to produce the records of the other clients in the Rendina matter. Finally, respondent was charged with two counts of commingling and conversion in the Humphrey matter.

Hearing Committee Recommendation

A formal hearing was conducted before the hearing committee. After considering the witness testimony and documentary evidence, the hearing committee found the ODC proved the factual allegations of the formal charges by clear and convincing evidence. It found respondent admitted to conversion, because he acknowledged that on several occasions, his trust account fell below the amount he should have retained for Dr. Rendina. The committee determined that respondent’s delay in paying Dr. Rendina and in handling the Humphrey matter evidenced a failure to act with diligence and promptness. The committee also found that respondent failed to keep client and third-party funds in a separate trust account. However, the committee found the failure to cooperate charge was not proven because respondent had asserted a Fifth Amendment privilege and this assertion “arguably justified his refusal to furnish certain information.”[1]
Turning to the issue of an appropriate sanction, the committee recognized as aggravating factors multiple offenses, substantial experience in the practice of law, and vulnerability of the victim, in particular Mrs. Humphrey. As mitigating factors, the committee recognized that respondent has no prior disciplinary record, the fact that all of respondent’s offenses occurred within a relatively short period of time, and that restitution was made without the necessity of extensive disciplinary or legal proceedings. Considering these factors, the committee recommended that respondent be suspended from the practice of law for eighteen months.

Disciplinary Board Recommendation

The disciplinary board concurred in most of the findings of the hearing committee. However, the board found the hearing committee erred in suggesting that respondent’s assertion of a Fifth Amendment privilege justified his failure to cooperate in the ODC’s investigation. The board concluded that because respondent is required to maintain certain records under the disciplinary rules, he may not refuse to produce them by claiming a Fifth Amendment privilege.
The board found respondent’s conduct in connection with the remaining counts involved dishonesty and misrepresentation. As to the Rendina matter, it pointed out that respondent misappropriated settlement funds in four cases and did not pay the medical provider for periods of time ranging from three to twelve months. Respondent misrepresented to his clients that he would promptly pay the medical provider, when in fact he used the funds to pay his own expenses. With regard to the Humphrey matter, the board found that respondent failed to deposit Mrs. Humphrey’s cash into his trust account, and he permitted almost four years to elapse before he returned these funds to her. Although respondent asserted a “black box” defense with regard to some of these funds, the board concluded that respon *526 dent did not produce evidence sufficient to overcome the presumption set forth in Louisiana State Bar Ass’n v. Krasnoff, 515 So.2d 780 (La.1987), that the funds were converted. Likewise, the board noted that respondent failed to account to Mrs. Humphrey for the sums he drew against the money order she had given to him, and he did not return those funds until a year after a request was made to do so.
Turning to the appropriate sanction, the board concluded the baseline sanction for respondent’s misconduct under Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), is a three-year suspension from the practice of law. As aggravating factors, the board found multiple offenses, substantial experience in the practice of law, and vulnerability of the victim, Mrs. Humphrey. The board found two mitigating factors, namely absence of a prior disciplinary record and timely good faith effort to make restitution without the necessity of extensive disciplinary or legal proceedings.
Considering all these factors, the board recommended that respondent be suspended from the practice of law for two years. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Both respondent and the ODC filed objections in this court to the disciplinary board’s recommendation, and the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
We find the disciplinary board properly rejected respondent’s contention that he could refuse to produce the records of his client trust account on Fifth Amendment grounds. This issue was extensively discussed in our opinion in Louisiana State Bar Ass’n v. Chatelain, 513 So.2d 1178 (La.1987), in which we concluded that an attorney cannot invoke a Fifth Amendment privilege as to records which are required to be maintained under the professional rules.[2] In Chatelain, we looked to Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), which held that a Fifth Amendment privilege cannot be applied to documents “required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established.” Under Shapiro, a document is a “required record” if (1) the purpose of the governmental inquiry is essentially regulatory; (2) information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and (3) the records themselves have assumed public aspects which render them at least analogous to public documents. We reviewed each of these elements with respect to an attorney’s client trust account records, and concluded that the respondent could not assert a Fifth Amendment privilege over such documents:
The records which were requested by subpoena duces tecum in this case meet the requirements of the “required records doctrine” enunciated in Shapiro. The Louisiana Supreme Court has sole authority over bar matters, and “ultimate responsibility as to the discipline warranted by the facts.” “The state bar association is created and regulated un *527 der the rule-making power of this court, and its articles of incorporation, disciplinary proceedings, and code of professional conduct have been adopted as rules of this court. This adoption by rule is pursuant to the cited constitutional mandate and in accord with the inherent power of this court to prescribe rules and regulations governing the practice of law in the jurisdiction.” The Committee on Professional Responsibility, exercising a quasi-judicial function, has the power to investigate alleged acts of misconduct and is granted subpoena power to compel attendance and documents necessary in that inquiry. This inquiry is necessary for the regulation of the bar.
Chatelain, 513 So.2d at 1183 (footnotes omitted).
Respondent should have been aware that under our ruling in Chatelain, he could not withhold the requested information.[3] Accordingly, we find the ODC has proved respondent failed to cooperate in its investigation.
Turning to the other counts, we find the record supports the conclusion that respondent commingled and converted client and third-party funds,[4] and that he delayed payment to the third-party medical provider. His conduct is not merely negligent, but contains elements of misrepresentation and dishonesty.
In fashioning an appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
Under the instant facts, Hinrichs suggests the baseline sanction for respondent’s misconduct would be a three-year suspension from the practice of law. However, we find there are mitigating factors present, including the absence of a prior disciplinary record and respondent’s payment of restitution.[5] Considering all these factors, we conclude the two-year suspension from the practice of law recommended by the disciplinary board is appropriate.
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Edward L. Henderson be suspended from the practice of law in Lou *528 isiana for a period of two years. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J., dissents and assigns reasons.

 Traylor, J., not on panel. Rule IV, Part II, § 3.

. It does not appear from the record that respondent ever formally asserted a Fifth Amendment privilege in connection with the ODC's investigation. Rather, the first time respondent raised the issue was during the formal hearing, when he indicated that criminal charges were pending against him in connection with one of the client settlements, and stated that he "refused to feed information” to be used against him.

. Rule 1.15 of the Rules of Professional Conduct provides:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer’s own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation, [emphasis added]

. We note that Rule 8.4(g) of the Rules of Professional Conduct provides that the "expressed assertion of a constitutional privilege” may be a valid defense to a failure to cooperate charge. However, the record of the instant case indicates respondent never expressly asserted a constitutional privilege until the matter was in the hearing committee, well after the formal charges had been filed. Had respondent expressly asserted the privilege when the ODC first requested the information, his defense that he was acting in good faith in refusing to disclose the information may have been stronger. Because respondent failed to clearly assert his privilege or seek a protective order, and because the information sought by the ODC was virtually identical to that requested in Chatelain, we decline to hold respondent's failure to cooperate was in good faith.

. As to the $9,055 which Mrs. Humphrey gave to respondent in 1992 to place in his safe, we find it is unclear from the record whether these funds were given to respondent in connection with his representation of Mrs. Humphrey, because it appears respondent did not commence his representation of her until 1993. Accordingly, it is questionable whether respondent was required to place these funds in his trust account under Rule 1.15(a) of the Rules of Professional Conduct. Nonetheless, we conclude á disciplinary violation with regard to these funds occurred when respondent failed to promptly refund them upon Mrs. Humphrey's request.

. Admittedly, respondent did not make restitution until after the ODC commenced an investigation; however, he paid restitution prior to extensive legal or disciplinary proceedings.