*1019 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM*
| ]This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kathleen M. Wilson, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
In June 2009, respondent’s client trust account was overdrawn in the amount of $186.54. In response to the ODC’s inquiry regarding the account, respondent indicated that in March 2009 she wrote a $250 check to a client, representing a refund of fees for an expert. The client did not negotiate the check until June 18, 2009, by which time respondent no longer had sufficient funds in her trust account to cover the check. The bank nevertheless paid the check, and the next day, respondent made a deposit of personal funds to the account.
In the meantime, on May 29, 2009, respondent wrote a $93 check from her trust account for the filing fees in a divorce matter for another client. However, respondent did not receive funds from the client for the filing fees until the next day, and she made no deposits into her trust account until June 19, 2009.
In connection with its investigation, the ODC requested copies of the bank records for respondent’s trust account. The records revealed that in May 2009, two 12debit card transactions were posted to the trust account.[1] One transaction was made in *1020 connection with a client matter, but respondent acknowledged that a $706.10 debit represented payment to her husband’s cellular telephone provider. Respondent did not authorize this transaction but indicated that her husband (a non-lawyer) had inadvertently used the trust account debit card to pay his cell phone bill. Respondent also indicated that the error was corrected immediately.
Thereafter, the ODC’s audit consultant, Ronald White, performed an audit of respondent’s trust account. Following his review, Mr. White found that respondent commingled her personal funds with client funds in the trust account on numerous occasions over the ten-month period between January and October 2009. Mr. White also noted that respondent failed to deposit client funds into her trust account, failed to maintain sufficient funds in the account to cover checks written to her clients or to third parties on their behalf, and failed to promptly pay Dr. Marvin Clifton for medical treatment provided to three clients.[2]
DISCIPLINARY PROCEEDINGS
In July 2010, the ODC filed formal charges against respondent, alleging that she violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(4) (advance deposit for costs and expenses must be placed in the lawyer’s trust account), 1.15(a) (a lawyer shall hold property of clients or third persons that is in a lawyer’s possession in connection with a representation separate from the [ ¡¡lawyer's own property), 1.15(d) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person and promptly deliver any funds or other property that the client or third person is entitled to receive), 1.15(f) (an electronic, telephone, or wire transfer from a client trust account must be directed by a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Respondent answered the formal charges and essentially denied any misconduct. In particular, respondent denied that her failure to promptly pay Dr. Clifton constituted misconduct, as she had an agreement with Dr. Clifton that the funds owed him could be paid “at a later time” and that he “would not pursue any of the clients personally for payment.”

Hearing Committee Report

Following the filing of respondent’s answer, the hearing committee conducted a formal hearing. After considering the testimony and evidence presented at the hearing, the committee adopted Mr. White’s audit findings and made the following factual findings:
Respondent routinely failed to reconcile her trust account. Additionally, she commingled her personal funds with her clients’ funds, and converted client and third-party funds on several occasions. No harm was caused to respondent’s clients by her misconduct.
Based on these facts, the committee determined respondent violated Rules *1021 1.5(f)(4), 1.15(a), 1.15(f), and 8.4(c) of the Rules of Professional Conduct. The committee determined respondent did not violate Rule 1.15(d) (failure to timely remit funds to a client or third person) because Dr. Clifton agreed to delay payment of the funds due to him for an indeterminate period of time.
|/The committee found respondent’s conduct was negligent, knowing, and intentional. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction for respondent’s misconduct is a suspension from the practice of law.
The committee found as aggravating factors a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 2003). The committee found as mitigating factors the absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely good faith effort to rectify the consequences of the misconduct, and a cooperative attitude toward the proceedings.
Based on this court’s prior jurisprudence involving similar misconduct, the facts of this case, and the nature of the aggravating factors balanced with the factors in mitigation, the committee recommended that respondent be suspended from the practice of law for three years, fully deferred, subject to a two-year period of supervised probation with conditions.
Respondent filed an objection to the hearing committee’s report, arguing that the sanction recommended by the committee is too harsh. The ODC objected to the committee’s conclusion that respondent’s conduct did not amount to a violation of Rule 1.15(d).

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous. The board also determined the committee correctly applied the Rules of Professional Conduct, except the board disagreed with the committee that respondent did not violate Rule 1.15(d).
laThe board found respondent violated Rule 1.5(f)(4) by failing to deposit advanced costs into her client trust account.[3] She violated Rule 1.15(a) by regularly leaving her earned attorney’s fees in her trust account, by paying filing costs out of her trust account prior to receiving the funds from her clients, by allowing the balance of her trust account to drop below the amount she was holding for clients and third parties, and by depositing client funds into her operating account before transferring the funds to her trust account. The board noted that there was no evidence in the record that respondent’s violation of Rule 1.15(a) resulted in actual client harm or was the result of a selfish motive. Respondent violated Rule 1.15(d) by delaying payment of funds to a third party, Dr. Clifton, without obtaining the consent of her clients.[4] Respondent violated Rule 1.15(f) by using a debit card to withdraw funds from her trust account and by failing to adequately safeguard the debit card, which resulted in an unauthorized transaction by her husband for a personal expense. Finally, the board found respondent violated Rule 8.4(c), as she knew or should have known that her actions regarding her trust account were improper.
*1022 Respondent violated duties owed to her clients. She knowingly commingled and converted client and third-party funds, which created the potential for harm. Respondent’s conduct was negligent with regard to her violation of Rules 1.15(d) and 1.15(f). After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is suspension.
Rln aggravation, the board found a pattern of misconduct and multiple offenses.[5] The board agreed with the mitigating factors found by the committee.
Turning to the issue of an appropriate sanction, the board determined that the three-year suspension recommended by the hearing committee was too harsh. Instead, the board recommended respondent be suspended from the practice of law for one year and one day, fully deferred, subject to a two-year period of supervised probation with conditions.[6] The board also recommended that respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
The record in this matter establishes that respondent grossly mismanaged her client trust account. She failed to deposit advanced costs and other client funds 17into the account, commingled her funds with client funds by regularly leaving her attorney’s fees in the account, allowed the balance of the account to drop below the amount she was holding for clients and third parties, and failed to promptly deliver to Dr. Clifton funds withheld from her clients’ settlements for medical treatment. This conduct violated Rules 1.5(f)(4), 1.15(a), 1.15(d), 1.15(f),[7] and 8.4(c) of the Rules of Professional Conduct.
*1023 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1178 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Although respondent’s conduct caused no actual harm, her improper use of her trust account created the potential for harm. Accepting the aggravating and mitigating factors found by the disciplinary board, we find the appropriate sanction for respondent’s misconduct is a suspension from the practice of law for a period of one year and one day. However, our jurisprudence has recognized that in cases where the commingling causes no actual harm, a fully-deferred suspension coupled with supervised probation will afford respondent the opportunity to correct the problems which caused her misconduct, while at the same time protecting the public from future misconduct. See, e.g., In re: Cicardo, 04-0828 (La.7/2/04), 877 So.2d 980 (fully deferred one-year suspension, subject to a two-year period of probation, imposed upon an attorney who kept personal funds in his client trust account, which he then borrowed on occasion to fund his operating account; no actual harm to clients or third parties). Consistent with this jurisprudence, we will fully defer the suspension and place respondent on supervised probation for two years subject to the conditions recommended by the board.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Kathleen M. Wilson, Louisiana Bar Roll number 28836, be and she hereby is suspended from the practice of law for a period of one year and one day, fully deferred, followed by a two-year period of supervised probation governed by the terms and conditions set forth in the disciplinary board’s report. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. At present, Rule 1.15(f) of the Rules of Professional Conduct prohibits a lawyer from using a debit card (or ATM card) to withdraw funds from a client trust account. However, this provision was not added to the rule until *1020 January 2010, after the transactions at issue in the formal charges.

. Respondent settled the Theron Morris case on December 5, 2007 and withheld $1,216.67 to pay Dr. Clifton, but he did not receive the funds until March 30, 2009. In the Tony Colar case, respondent settled the matter on March 20, 2008 and withheld $1,200 to pay Dr. Clifton, but he did not receive the funds until April 27, 2009. In the Henry Gardner case, respondent settled the matter on March 26, 2008 and withheld $1,298 to pay Dr. Clifton, but he did not receive the funds until April 13, 2009. The clients in all three matters promptly received their portion of the settlement funds.

. The board noted that in one client matter, respondent was paid $1,500 for attorney's fees and filing fees; however, there was no corresponding deposit into her trust account for the filing fees, which were paid by a check drawn on the trust account.

. Although respondent had reached an agreement with Dr. Clifton that she could delay payment of the funds, the board noted that only the client, not a third party, is able to agree to something other than prompt payment of third-party funds under Rule 1.15(d).

. The board rejected the committee's conclusion that refusal to acknowledge the wrongful nature of the conduct and substantial experience in the practice of law are applicable as aggravating factors. First, the board explained that there is no evidence in the record showing respondent refused to concede that her conduct was wrong. Second, the board noted that at the time of the misconduct, respondent had been practicing law for approximately six years (admitted 2003). The board explained that while this does not qualify respondent for the mitigating factor of "inexperience in the practice of law,” it does not establish she had "substantial” experience.

. These conditions are as follows: (1) Regular quarterly audits of respondent's IOLTA account shall be submitted to the ODC during the period of probation to be performed by a CPA of respondent's choosing, approved by the ODC, with the costs and expenses of the audits to be paid by respondent; (2) At least six hours of respondent's mandatory CLE requirements during the probationary period shall be in the area of law practice management/client trust account management; (3) Respondent must successfully complete both the Louisiana State Bar Association’s Ethics School and Trust Accounting Program during the probationary period; and (4) Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.

.Respondent violated this rule by allowing her husband, a non-lawyer, to authorize a debit card transaction from her client trust account. However, the May 2009 debit card transactions did not otherwise violate Rule 1.15(f) as it was in effect at the time of the misconduct. See note 1, supra.